**Lorine Bruin, Plaintiff-Appellee, v. Peter Bruin and Unknown Owners, Defendant-Appellant.**

**Gen. No. 50,746.**

First District, Third Division.

June 16, 1966.

John M. Van Der Aa, of South Holland, and Byron S. Matthews and Thomas A. Matthews, of Chicago, for appellant.

Piacenti & Cifelli, of Chicago Heights, for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal taken by the defendant from a final order of the circuit court of Cook County in a partition proceeding which found that the plaintiff was the owner of an undivided one-half interest in certain real estate and directing that the property be partitioned. The matter was referred by the court to a master in chancery who, upon the termination of his tenure as a master, was appointed by the court as a special commissioner to proceed and file a report with the court.

The defendant raises and argues only one point in his brief. He contends that the conveyance of the subject property into joint tenancy was made by the defendant, Peter Bruin, not as a gift, but to obtain a mortgage loan and to avoid a foreclosure suit, and that the evidence in the case is clear that the property in question was not conveyed by Peter Bruin to his then wife as a gift or advancement.

The facts are these: Lorine Bruin, the plaintiff, testified that she married Peter Bruin in Crown Point, Indiana, in 1929 and was divorced from him in April, 1961. Five children were born of the marriage. In the latter part of January, 1942, the family moved to the property involved, which is located at 151 East 168th Street in South Holland, Illinois. Prior to that time the defendant's father, Cornelius Bruin, lived upon the premises. Prior to January, 1942, the four brothers and sisters of the defendant and the defendant had an interest in the property, together with the father, Cornelius Bruin. In October, 1941, Herman Bruin, one of the brothers of the defendant, came to the home of the parties in Glenwood, Illinois, and asked Peter Bruin, the defendant, if he would be interested in taking care of the property, which was going to be sold for delinquent taxes. He also stated to the defendant that if the defendant would take care of the property, and the plaintiff and the defendant would take care of the defendant's father for the remainder of his life, the defendant's brothers

and sisters would sign their shares over to the defendant. The plaintiff agreed to this arrangement, and at that time accompanied the defendant to the office of Mr. Van Der Aa, where the parties agreed to make "some kind of payments" on the house. At that time and place the defendant told the plaintiff that the property would be in her name when it was all straightened out. The testimony further indicated that the defendant had said, "When it was settled, when it was all straightened out, I would be in joint tenancy. My husband told me that all the time." The property involved is an eight-room farm house, two-story residence. The father of the defendant lived with the defendant and the plaintiff, and the plaintiff took care of him for nine years until he died in about March, 1951. Plaintiff washed for him and fed him and took care of him. The title to the property, pursuant to the agreement entered into between the brothers and sisters of the defendant, was quitclaimed to Peter Bruin subject to a life estate in Cornelius Bruin, the father.

The plaintiff testified that in December, 1951, she accompanied her husband to Mr. Van Der Aa's office. At that time Mr. Van Der Aa explained to her that the property was in joint tenancy and that she owned one-half of the property. She further testified that she had talked to her husband hundreds of times about the property and about the fact that neither could sell the property until both signed together, and that her husband in February, 1960, told her he realized that she had a half interest in the property. The children of the parties hereto were present on these occasions. A Torrens certificate of title to the property in question was admitted in evidence reflecting ownership in joint tenancy by Peter Bruin and Lorine Bruin, the parties hereto.

Mrs. Lois Roberts, a daughter of the parties, testified that she was present in the home of the parties in February, 1960, at which time the parties hereto had an

53

argument because her sister, Joyce, was married without the approval of the defendant, her father. The witness testified, "Then mom said if he was through, she had her half of the property. He said he knew she was entitled to it, but he didn't want to sell it right now."

Joyce Zoeteman, another daughter of the parties, testified that prior to her marriage she had lived with her family in the property in question. She corroborated plaintiff's testimony regarding her grandfather living with them until his death, and that her mother took care of him. She testified to a conversation which took place in her presence and in the presence of her then boy friend and present husband. The father said to her mother, "I know it's half your property, but I don't want him in the yard."

Mr. John J. Van Der Aa testified for the defendant. He stated that he was a real estate appraiser and had a mortgage on the farm property in question. At the time he made the original loan he did not give a thought to Mrs. Bruin being made a joint tenant in the property in order to secure the loan. He also stated that he would not have demanded that she become a joint tenant and execute the mortgage papers along with her husband.

The next witness for the defendant was William Staat, President of the First National Bank in Dolton. He first met the defendant when the defendant came to the bank to refinance a mortgage he had on the property. He suggested that the defendant put the property in joint tenancy with his wife. He further testified that it was not an absolute policy of the bank that both parties sign the papers, although that would be preferred. This witness testified that he "believed" that a conveyance of the property into joint tenancy with Mrs. Bruin was discussed at the time they signed the papers. It might be mentioned in this connection that both the plaintiff and the defendant testified that Mrs. Bruin, the plaintiff, did not go to the bank and Mrs. Bruin testified

■■■■■■■

that she never saw Mr. Staat in her life until he walked into the hearing room. The uncontradicted testimony of both the plaintiff and defendant is that the papers were brought from the bank to the home for Mrs. Bruin's signature. Mr. Staat merely testified in answer to a question if he ever discussed the conveyance (into joint tenancy before the loan was made) with Mrs. Bruin, "I believe I did."

The defendant testified that he went to the bank in Dolton in order to obtain a loan on the property and that Mr. Staat consented to make the loan and "recommended that both names be on the title to obtain this mortgage loan." That the property was then placed in joint tenancy with his wife. He took the papers home from Mr. Staat to Mrs. Bruin for the signing, as she was never in Mr. Staat's office. The defendant admitted that the plaintiff had cared for his father until the time of the father's death. When the defendant was asked whether he had told his wife that he was aware of the fact that half of the property was hers, he said, "No, I don't recall. Well, I wouldn't say for sure whether I made that statement or not, but I am sure I didn't say that." In answer to the question as to whether he did or did not know whether he made the statement, he answered, "I don't believe so."

■■■■■■ Based upon the foregoing testimony, the defendant claims that when he was having difficulty making mortgage payments he went to the bank in Dolton and applied for a loan to pay off the existing debt, and that a representative of the bank asked him to have the property conveyed in joint tenancy to the defendant and his wife because the policy of the bank required this in making loans. That the title was, accordingly, conveyed to a third party, who conveyed back to Peter Bruin and Lorine Bruin, his then wife, in joint tenancy in 1951. It is the further position of the defendant that no gift was intended to his then wife, Lorine Bruin,

at the time of the conveyance in 1951 but that the conveyance was at the request of the loaning bank as a prerequisite to obtaining the loan. It is the further contention of the defendant that since title was put in joint tenancy in 1951 solely to satisfy the requirement of the bank before a loan would be made, there is no presumption of a gift and no gift was intended or indicated. At the time of the divorce between the parties in 1961 the divorce decree did not adjudicate the interest of the parties, nor was such an adjudication sought by either of the parties in that proceeding. The defendant now seeks to overcome the presumption of a gift, where property is conveyed to a wife, solely based upon the testimony regarding the policy of the bank of Dolton to the effect that it desired to have the property in joint tenancy between husband and wife when making a loan. Mr. Staat's testimony was neither conclusive nor convincing on this question and when the evidence is considered as a whole, the trial court was justified in finding for the plaintiff. The law has long been established that where property is taken in the joint names of the husband and wife, and the consideration is furnished by one of them, there is a presumption of a gift from the one furnishing the consideration to the other. That presumption can be overcome only by clear, convincing and unmistakable evidence that no gift was intended.

In the case of Baker v. Baker, 412 Ill 511, 514, 107 NE2d 711, the court said:

> "The mere circumstance that a husband purchased the property placed in joint tenancy with his wife does not make him the equitable owner of her interest. Property voluntarily conveyed by a husband to his wife, without fraud or coercion is presumed to be a gift, notwithstanding the fact the husband purchased the property with his own money, and

56

the wife may hold the property against him. . . . This presumption of fact is not conclusive but may be rebutted by proof. It can only be overcome by clear, convincing, and unmistakable evidence that no gift was intended. (Lutticke v. Lutticke, 406 Ill 181; Link v. Emrich, 346 Ill 238.) It is often said the presumption of gift is not to be frittered away by mere refinement."

In the case before us, the testimony of Mr. Staat of the Dolton Bank, at best, could be considered as a desire on the part of the bank to have property placed in joint tenancy between husband and wife when a loan is made by the bank. He further testified that if any objection was urged the bank would not insist upon it. He did not explain the reason for the policy of the bank but indicated that if it was not placed in joint tenancy they would require the wife to sign anyway. On cross-examination Mr. Staat merely testified that they preferred to have both parties sign the papers, and that it was not an absolute policy of the bank that property be placed in joint tenancy in order to secure a loan.

The defendant cites the case of Insoda v. Insoda, 400 Ill 596, 81 NE2d 473, wherein the husband, in order to avoid liability under the Dram Shop Act, arranged to have the property placed in a land trust with the wife as the sole beneficiary thereof. The property there was acquired through the joint efforts of the husband and wife, and there was no evidence in that case that the conveyance was made for any other reason than to protect him against dramshop liability. The court there held that the presumption of a gift was overcome by the evidence in that case, and that decision is readily distinguishable from the case before us.

The case of Scanlon v. Scanlon, 6 Ill2d 224, 127 NE2d 435, is easily distinguishable on its facts from the case at bar. The evidence in that case showed that the

property was conveyed to the wife by the husband at a time when the husband was in the process of being adjudicated a bankrupt, and that the conveyance was made solely for the purpose of avoiding its confiscation in the bankruptcy proceeding. The property in its entirety in that case was conveyed to the wife and no joint tenancy was created. Both parties had contributed to the acquisition of the property and the court held it was unreasonable to determine that it was the intention of the parties to convey the entire estate as a gift. In the Scanlon case, supra, on page 231 the court, after mentioning that where a husband purchases real estate and takes title in his wife, there is a presumption of gift or advancement, said the following:

> "Among the circumstances which tend to rebut the presumption of a gift or advancement, or to show that the presumption is unreasonable, is the fact that the property conveyed consists of the husband's entire estate. . . . In Pool v. Phillips, 167 Ill 432, 442, this court observed: 'It has been uniformly held, whenever the question has arisen, that the gift of a husband's or father's entire estate to a wife or child by way of advancement is unreasonable.' "

We have examined all of the cases cited on behalf of the defendant and all are distinguishable from the case at bar. In this case the property was placed in joint tenancy with the wife by the act of the husband. The husband acknowledged on numerous occasions that the wife was half owner of the property. The evidence offered by the defendant as to his only reason for having the property placed in joint tenancy is not only not clear, convincing and unmistakable evidence that no gift was intended, but on the contrary, is indecisive, ambiguous and unclear. The cases cited by the defendant are cases in which all of the husband's property was

conveyed to the wife, and as pointed out in Scanlon v. Scanlon, supra, the ordinary presumption of a gift is unreasonable under those circumstances. The conveyance of the property in this case involved a joint tenancy, and while the plaintiff did not advance any money toward the acquisition of the property she did perform services, and the presumption of a gift has not been overcome.

Judgment affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.