MINNIE WHITE JOHNSON, Plaintiff and Counterdefendant-Appellant, *v.* ROSIE M. JOHNSON, Defendant and Counterplaintiff-Appellee.

(No. 55987;

First District (3rd Division)—April 19, 1973.

Joe Reiff, of Chicago, for appellant.

Bromberg & Bromberg, of Chicago, for appellee.

Mr. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court:

This is an appeal from a decree of partition entered by the Chancery Division of the Circuit Court of Cook County.

In June 1959 Minnie White Johnson and George Johnson, her husband, purchased, in joint tenancy, a two-flat building located at 2661 Warren Boulevard, Chicago. In 1966 George, unknown to Minnie, quit-claimed his interest in the building to his attorney who then reconveyed it in joint tenancy to George and Rosie Johnson, George's daughter by a previous marriage.

Upon the death of George in the following year, Minnie initiated the present action against Rosie by filing a complaint to quiet title. Rosie filed an answer and a counterclaim for partition. After Minnie answered the counterclaim a trial was had which resulted in a decree dismissing her complaint, finding that she and Rosie were tenants in common and ordering a partition and an accounting. Minnie's petition to vacate the decree and her petition requesting a determination, prior to a decree of sale, of the credits due her by reason of expenditures made by her for taxes, mortgage payments and maintenance, were denied.

Minnie's complaint alleged that she was in possession of the premises

and occupied the first floor as a homestead; that the $7,000 down payment on the $15,000 purchase price consisted of $4,500 from her own funds and $2,500 of the joint funds of herself and George; two mortgages covered the remaining purchase price and her personal funds had been used to reduce the mortgages and to pay for taxes, insurance and permanent improvements. She asserted that her husband had willfully deserted her and that the conveyances were unknown to her until after his death. She contended that her undivided one-half interest, dower and homestead rights, mortgage payments and the value of the permanent improvements exceeded the current value of the property.

Rosie's answer denied that Minnie's separate funds were used in the purchase of the building or in payment of the mortgages, insurances and taxes. She admitted the conveyances through which she took an interest but said she had no knowledge whether Minnie knew of them. She also claimed that she had no knowledge concerning the alleged improvement expenses. In her counterclaim she asserted she became a tenant in common with Minnie when her father died; that Minnie had been collecting the rent from the second flat in the building and despite requests had failed to account for the rentals.

In an amended answer to the counterclaim Minnie alleged that a fraud was effectuated against her rights and that established principles of public policy were circumvented by the conveyances and the partition proceedings.

The evidence at the trial consisted of Minnie's testimony, that of a real estate broker and various documents and exhibits. The evidence tended to prove that Minnie was steadily employed while George only contributed $18 a week for room and board when he was employed. The remainder of his money was placed in his own account which was used for periodic distributions to his children by a previous marriage. George left the marital abode several times, the last time was for the period approximately 14 months preceding his death. Previously, he had instituted divorce and partition proceedings; however, the case was dismissed. Minnie collected the rent from the building's second flat; this was done both during George's lifetime and after his death. Numerous bills and receipts, bearing the names of George, Minnie or both, were received in evidence. They pertained to improvements to the premises which were made during coverture, separation, and after George's death. The first mortgage payment books were introduced; they established that the mortgage was substantially reduced by periodic payments up to the time of the trial. The second mortgage payment receipts, totaling $3,000, were also introduced; the individual receipts were made out to Minnie or George.

On appeal Minnie makes two contentions: the conveyance by her husband constituted a fraud against her rights, and the court erred in denying her petition for a determination prior to any proposed sale of the credits due her. In support of her argument of fraud reference is made to the following: the inequities in paying the expenses related to the realty; the execution of her husband's quit-claim, unknown to her, during a period of desertion; the lack of consideration for the conveyance; the disbursements of his savings to children of a former marriage; his dying without leaving an estate and his dismissed suit for divorce and partition.

■ ■ A husband's right to dispose of his property is absolute during his lifetime. (*Frey v. Wubbena* (1962), 26 Ill.2d 62, 185 N.E.2d 850; *Hoeffner v. Hoeffner* (1945), 389 Ill. 253, 59 N.E.2d 684.) A joint tenancy, even though between husband and wife, can be severed when one of the tenants conveys his interest to a third person. (*Ennis v. Johnson* (1954), 3 Ill.2d 383, 121 N.E.2d 480.) The deprivation of the wife's expectation by a deed or gift is not vulnerable to attack unless the transaction is a sham, colorable or illusory and tantamount to a fraud. (*Holmes v. Mims* (1953), 1 Ill.2d 274, 115 N.E.2d 790; *Frey v. Wubbena.*) The facts of the present case do not disclose any of these weaknesses. George Johnson's previous attempt to partition the premises does not establish fraud and his failure to inform his wife of the conveyances is not sufficient evidence, of itself, to show that the transactions were fraudulent. Although a conveyance without one party's knowledge made on the eve of marriage may be deemed a prima facie fraud upon that party's marital rights (*Moore v. Moore* (1958), 15 Ill.2d 239, 154 N.E.2d 256) the rule is inapplicable to transfers during marriage. (*Toman v. Svoboda* (1972), 4 Ill.App.3d 148, 280 N.E.2d 499.) Consistent with a husband's absolute right to convey his interest is the right to effectuate a gift of that same interest. It was George's privilege to make a gift to his daughter. There was no evidence that the conveyances by which he made Rosie a joint tenant in an undivided one-half interest in the realty were illusory or shams. There was no evidence—or allegation—which showed the relationship between the realty and George's estate. The alleged inequity in the cash payments made by George and Minnie toward the realty is magnified by the fact that the property has decreased in value from the original purchase price. On the other hand, the supposed inequity is mitigated by other factors. The initial down payment was partially met by the joint funds of the parties. George made payments, although meager, for room and board. Even if Minnie paid off the entire second mortgage herself and had reduced the first mortgage while meeting the

expenses of repairs, taxes and insurance, she had collected approximately $11,500 in rent from the second flat. The actual repair and improvement bills amounted to $6,907.13; approximately $2,300 of this sum was for work performed after George's death or during one of the periods of his desertion. Thus, a large amount, if not all, of the building's expenses during coverture could have been paid by the rent.

■■ When property is taken in the joint names of a husband and wife, and consideration has been furnished by one of them, there is a presumption of a gift from the one furnishing the consideration to the other; only clear, convincing and unmistakable evidence that no gift was intended can overcome the presumption. (*Bruin v. Bruin* (1966), 72 Ill. App.2d 51, 219 N.E.2d 68.) The presumption is strengthened if the purchase price was comprised of the funds of both parties. (*Walker v. Walker* (1938), 369 Ill. 627, 17 N.E.2d 567.) Similarly, in the absence of fraud or an agreement to repay, a wife's expenditures for family support and improvements to the dwelling house are deemed to be gifts. *Spalding v. Spalding* (1935), 361 Ill. 387, 198 N.E. 136.

■■ The record is barren of any proof which sustains the broad charge of fraud. And it is also barren of any proof to sustain the even broader allegation that the conveyances were used to circumvent established principles of public policy. The decree of partition is affirmed.

■■ We believe, under the circumstances of this case, the request of Minnie Johnson for a pre-determination of her credits so as to facilitate her bid at the proposed sale, should have been granted. She stated in her petition that the appraiser appointed by the court had valued the property at $12,000; that she had $1,500 and could borrow another $500, the total of which was insufficient to bid at the sale, but if the court would determine, before the sale, the credits to which she might be entitled, as the decree provided the court would do at some subsequent date, she might be in a position to make a bid. We find no exact precedent for this procedure, but Rosie Johnson's counsel informed us during oral argument that he had no objection to the suggested pre-sale adjudication and it is unnecessary to have a precedent for equitable relief before it will be granted. (*First Nat. Bank v. Bryn Mawr Beach Bldg. Corp.* (1937), 365 Ill. 409, 6 N.E.2d 654; *Stegeman v. Smith* (1966), 67 Ill.App.2d 451, 214 N.E.2d 597.) Furthermore, the trial judge who denied Minnie's petition decreed otherwise in the case of *Chirikos v. Akathiotis* (1972), 9 Ill. App.3d 191, 292 N.E.2d 120, where the defendants were allowed to bid a sum which included their expenditures upon the realty and payments toward a mortgage indebtedness. Concededly, the facts were different in *Chirikos v. Akathiotis* and Minnie has not accounted for her own rent nor

that of the second flat and she has made improvements to the property without the consent of her co-tenant. The net credits may be slight; nevertheless, they should be computed. The denial of Minnie Johnson's petition for equitable relief is therefore reversed and the cause is remanded with directions to make a presale determination of the credits, if any, due her.

Affirmed in part; reversed in part, and remanded with directions.

McNAMARA and McGLOON, JJ., concur.