(No. 53948

*In re* MARRIAGE OF MARY ANN ROGERS, Appellee,
and ROBERT ROGERS, Appellant.

*Opinion filed June 4, 1981.*

Gerald M. Sheridan, Jr., of Wheaton, for appellant.

John T. Perry and Michael H. Polley, of Wheaton (Vescelus & Perry, of counsel), for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

The parties to this appeal were married on December 1, 1956, and the marriage was dissolved in 1979 by order of the circuit court of Du Page County. Respondent, Robert Rogers, was ordered to pay petitioner, Mary Ann Rogers, maintenance of $500 per month for three years from the judgment date. The marital residence of the parties, owned in joint tenancy, was ordered to be sold within this same three-year period.

Petitioner was given the right to remain in possession of the residence until its sale and was given an option to purchase respondent's interest in it. That interest was judged to be $20,000, with interest compounded at a 7% annual rate. The value of the residence, based upon 1977 appraisals, was determined as between $105,000 and $110,000. Petitioner was made responsible for mortgage and tax payments and for upkeep of the premises. The furniture and other furnishings were divided between the parties. Respondent was ordered to pay $3,500 in attorney fees in 12 monthly installments. Other provisions irrelevant here also were entered.

Respondent contends on appeal that he should have been assigned an interest in the marital residence to correspond to the amount of nonmarital money he invested in it. The appellate court has divided on the issue of whether nonmarital property, as defined under the new Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*) remains nonmarital property when it is placed in a jointly held bank account or in jointly held real estate. See, *e.g., Klingberg v. Kling-*

*berg* (1979), 68 Ill. App. 3d 513 (money in joint bank account held marital property in the absence of evidence of a contrary intent); *In re Marriage of Key* (1979), 71 Ill. App. 3d 722 (identifiable nonmarital assets exchanged for jointly held property should be refunded to the investing party where gift was not intended); *In re Marriage of Dietz* (1979), 76 Ill. App. 3d 1029 (new act intended to destroy presumption that interspousal conveyances evidence donative intent); *In re Marriage of Smith* (1979), 77 Ill. App. 3d 858 (money invested in joint bank account was marital property); *In re Marriage of Amato* (1980), 80 Ill. App. 3d 395 (nonmarital funds commingled with marital funds to purchase marital asset transmuted those funds into marital property); *In re Marriage of Leon* (1980), 80 Ill. App. 3d 383 (nonmarital funds deposited in joint bank account and used to pay the mortgage on the marital residence; held that the residence was marital property); *In re Marriage of Preston* (1980), 81 Ill. App. 3d 672 (inheritance invested in marital residence owned in joint tenancy; held that inheritance remained nonmarital property); *In re Marriage of Atkinson* (1980), 82 Ill. App. 3d 617 (property held in joint tenancy held marital property, despite fact that one spouse paid entire amount with nonmarital money); *In re Marriage of Scott* (1980), 85 Ill. App. 3d 773 (nonmarital money invested in marital home owned in joint tenancy held marital property); *In re Marriage of Schriner* (1980), 88 Ill. App. 3d 380 (commingling of nonmarital cash evidences intent to treat it as marital property); *In re Marriage of Lee* (1980), 88 Ill. App. 3d 1044 (adopting transmutation theory); *In re Marriage of Crouch* (1980), 88 Ill. App. 3d 426 (art objects not transmuted despite some evidence of commingling).

The appellate court in this case held that the marital residence was appropriately considered marital property. (86 Ill. App. 3d 904.) We affirm.

The parties agree upon the basic facts. In 1967, respondent inherited $65,000 in securities and cash. This money and these securities were initially maintained by respondent in his name only. In 1968, the parties, living in Michigan, sold their home and moved to Colorado, where they bought another home held in joint tenancy. The down payment for this home was $24,000. Approximately $8,000 of the down payment came from the net proceeds of the sale of the parties' Michigan residence; the balance came from funds which respondent had inherited.

The Colorado home was sold in 1971, and approximately $25,000 was realized from that sale, all of which was invested in the down payment on their next home in Wheaton. Additional payments for the home made by respondent came from the inheritance.

It is well recognized that statutes are construed with reference to the law existing prior to their enactment, in order to ascertain their purpose. (See *Kerner v. State Employees' Retirement System* (1978), 72 Ill. 2d 507, 512; *Harding v. Albert* (1939), 373 Ill. 94, 97.) Prior to the advent of the new Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*), a marital residence held in joint tenancy was generally regarded as owned by both spouses, even if one spouse had furnished all of the consideration for it. The consideration-furnishing spouse was presumed to have intended a gift of one-half of the property. (*Doody v. Doody* (1963), 28 Ill. 2d 191, 194; *Peck v. Peck* (1959), 16 Ill. 2d 268, 283; *Savich v. Savich* (1957), 12 Ill. 2d 454, 460; *Lutticke v. Lutticke* (1950), 406 Ill. 181, 187-88.) It was said that the gift presumption was one "of fact" which could be rebutted "by clear, convincing, and unmistakable evidence that no gift was intended. [Citations.]" *Baker v. Baker* (1952), 412 Ill. 511, 515.

Section 17 of the prior divorce act (Ill. Rev. Stat. 1975, ch. 40, par. 18), however, provided that the court

could compel the conveyance of property held by one spouse to the other spouse upon "equitable" grounds. Section 18 of the prior act allowed the court to award one spouse the property of another in particular circumstances in lieu of alimony. Ill. Rev. Stat. 1975, ch. 40, par. 19.

Under the new act, section 503 classifies property as marital or nonmarital in order to assign or divide it upon a marriage dissolution (Ill. Rev. Stat. 1977, ch. 40, par. 503). "[T]he court shall assign each spouse's non-marital property to that spouse. It also shall divide the marital property without regard to marital misconduct in just proportions ***." (Ill. Rev. Stat. 1977, ch. 40, par. 503(c).) Property acquired by either spouse after the marriage but prior to a judgment of dissolution is "presumed" to be marital property, regardless of how title is held. (Ill. Rev. Stat. 1977, ch. 40, par. 503(b).) This same section in which the presumption is established, however, also provides for its destruction upon a showing that the property at issue was acquired (1) by gift, bequest, devise, or descent (Ill. Rev. Stat. 1977, ch. 40, par. 503(a)(1)), (2) "in exchange for property acquired before the marriage," or (3) "in exchange for property acquired by gift, bequest, devise or descent" (Ill. Rev. Stat. 1977, ch. 40, par. 503(a)(2)), and in other ways not relevant here (Ill. Rev. Stat. 1977, ch. 40, pars. 503(a)(3) through 503(a)(6)).

The new act, unlike the old one, provides for the division of marital property without regard to marital fault. The new act incorporates a partnership theory of marriage. (*In re Marriage of Komnick* (1981), 84 Ill. 2d 89, 94; see *Bentley v. Bentley* (1981), 84 Ill. 2d 97; *In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31; *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563.) The Act does not purport, however, to change the law regarding interspousal transfers of property owned individually.

It does not indicate, by implication or otherwise, any dissatisfaction with prior cases in which the intention of a spouse conveying property was ascertained. It may be anachronistic now to refer to an intent to convey a gift to the other spouse, but it is not improper to refer to an intent to convey a gift to the marriage. Therefore, a marital residence owned by both spouses, even if one spouse has furnished all of the consideration for it out of nonmarital funds, will be presumed "in fact" as marital property, absent convincing rebutting evidence. Accord, *Carter v. Carter* (Me. 1980), 419 A.2d 1018.

It is argued, however, that convincing evidence to rebut the gift presumption was presented in this case. Respondent testified that he and his wife, prior to the purchase of the Wheaton house, had conversations regarding the method of holding title to it:

> "I remember on many occasions discussing with her the fact that let's remember that this is an investment in a piece of real estate. It is where I am putting my [inheritance] money, and when you get yours, you can do what you want to do with it. I used the term, I might as well enjoy it while I have the money."

Petitioner, on rebuttal, testified as follows:

> "Q. Mrs. Rogers, did you and your husband ever enter into an oral or written agreement, substance of which would provide that each of you upon receipt of an inheritance, would retain it solely as your own separate and non-marital property?
> A. No."

Respondent and petitioner, moreover, segregated a portion of their inheritances, which tends to indicate that the portion invested in the marital home, used for parties' mutual benefit, and treated, during the marriage, as joint property, was intended to be marital property. (*Klingberg v. Klingberg* (1979), 68 Ill. App. 3d 513.) We hold, therefore, that there was no error in refusing to trace respondent's investment in the marital home and refunding it to him.

The parties agree that the equity in the marital residence was approximately $68,000, and respondent contends that his awarded portion of that equity, $20,000, was not a "just proportion."

The petitioner, at the time of the hearing, was earning $51 per week as a typist and received approximately $8 per week in tips from her customers at beautician's school. Petitioner had been attending the school for about one year and was expected to graduate approximately one month after the hearing. She had not yet been licensed and had not found permanent employment. No evidence was presented as to the normal starting salary of a beautician. Petitioner apparently held some stock in her own name at the time of the hearing. Its value was not established on the record, but petitioner guessed it was less than $1,000.

Respondent had lost his job in July 1977 and had left the marital residence in October 1977. He obtained a job in Colorado in March 1978 as a manufacturing manager. His gross salary was $33,000 annually; his monthly take-home pay was $1,535. Respondent's inheritance was depleted at the time of the hearing. He estimated that $30,000 was spent on the marital residences, $5,000 to $8,000 was spent on home furnishings to which he made no claim, $8,000 was paid in capital gain taxes, and the rest was lost on bad investments.

In determining a just division of marital property, section 503 requires consideration of the following factors:

> "(1) [T]he contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property, including the contribution of a spouse as a homemaker or to the family unit;
>> (2) the value of the property set apart to each spouse;
>> (3) the duration of the marriage;
>> (4) the relevant economic circumstances of each

spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children;

    (5) any obligations and rights arising from a prior marriage of either party;

    (6) any antenuptial agreement of the parties;

    (7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;

    (8) the custodial provisions for any children;

    (9) whether the apportionment is in lieu of or in addition to maintenance; and

    (10) the reasonable opportunity of each spouse for future acquisition of capital assets and income." (Ill. Rev. Stat. 1977, ch. 40, pars. 503(c)(1) through 503(c)(10).)

Respondent's argument primarily centers on the asserted inequity of awarding him a share of the house less than his contribution to its purchase. Although the contribution of respondent was required to be taken into account, it had to be balanced against the other factors listed. (See *In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 36-38.) Here, the marriage lasted a long time. The respondent's economic circumstances, including his occupation and employability and his opportunity to acquire assets and income, were superior to petitioner's. Although the parties' daughter, 20, was working full time as a secretary and their son, 18, was working part time at a restaurant, both were living at home, and custody was awarded to petitioner. Under these circumstances, the court's decision was reasonable.

Nor was the court unreasonable in denying the motion of respondent, through new counsel, to reopen the proofs after the court decision, since, as argued by petitioner, the evidence sought to be introduced was available to respondent at the time of the hearing.

Finally, respondent challenges the award of attorney fees and maintenance. Neither the number of hours

petitioner's attorney billed nor the hourly rate charged was challenged. Under the facts here, the trial court did not abuse its discretion, in considering the "financial resources of the parties," by awarding petitioner's attorney $3,500 to be paid for by respondent in 12 monthly installments.

We are also of the opinion that the maintenance award which, at $500 per month for three years, was in an amount slightly in excess of 30% of respondent's after-tax income for three years, was reasonable.

Accordingly, the judgment of the appellate court is affirmed.

*Judgment affirmed.*