*In re* MARRIAGE OF CHERYL SUE NAGEL, Petitioner-Appellee, and DEAN ARTHUR NAGEL, Respondent-Appellant.

Fourth District   No. 4—84—0531

Opinion filed May 22, 1985.

Fellheimer, Fellheimer, O'Dell & Travers, Ltd., of Pontiac (Robert M. Travers, of counsel), for appellant.

Harold M. Jennings Law Office, of Bloomington, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

The parties were married in January 1973. The marriage was dissolved on October 4, 1983, with written judgment of dissolution entered on December 22, 1983, reserving child custody and property issues. After further hearings, the court resolved the reserved issues by written opinion of May 31, 1984, and entered a written order thereon on July 3, 1984, awarding custody of the parties' three children to petitioner and apportioning the property. Respondent appeals from the order of the circuit court of McLean County, specifically, the finding that respondent failed to rebut the presumption of a gift to the marital estate of the marital residence purchased in November 1979 with title taken in joint tenancy.

The salient facts with regard to the real estate were succinctly stated by the court in its written opinion dated May 31, 1984:

"At the time of the marriage of the parties the Respondent was purchasing a home which they then lived in until 1979. From 1973 to 1975 marital funds of $100 per month for 14 months were used to pay mortgage payments when due. *** The non-marital estate was not transmuted by the application of a portion of the payment that was used to reduce the princi-

pal.

In 1975 funds were paid to the Respondent in satisfaction of his share of his father's estate. The parties' joint checking account was used as a conduit through which the balance of the mortgage was retired. By this deposit to the joint account the non-marital funds became a contribution to the marital estate. The Respondent built a garage using non-marital materials, his own labor, and approximately $1,000.00 of marital funds. This did not result in a transmutation of the estate into a marital one.

In 1979 after the property had appreciated in value it was sold for $42,000.

The parties' present home was purchased for $60,000 contemporaneous with the sale of the former home. Title to this real estate was taken in the names of both Petitioner and Respondent as joint tenants with right of survivorship and not as tenants in common.

The amendments to sec. 503(c)(2) do not alter the rule that property obtained by gift is not subject to the requirement that reimbursement is to be made for contributions to the marital estate.

To negate the presumption of gift the donor must establish by clear and convincing evidence that a gift was not intended. [Citations.] The testimony in this case fails to overcome the presumption of gift.

The Court will, therefore, find the real estate to be marital property with a value of $60,000 encumbered with a marital debt of $13,794.13 and taxes for the year 1983 payable in 1984."

The court awarded the residence, the sole substantial item of marital property, to respondent, and awarded the petitioner the sum of $20,000 as her share of the marital estate, imposing a lien on the real estate in that amount.

Respondent maintains that the court's finding that the presumption of gift was not rebutted was against the manifest weight of the evidence, and that he is entitled to reimbursement for his nonmarital interest.

■ He first contends that his testimony concerning lack of donative intent at the time title was taken was sufficient to overcome the presumption of gift. He testified that the lending institution wanted both of the parties' signatures on the mortgage, but that he had not intended to make a gift to petitioner. Both of the parties' names were

on the deed, mortgage application, and the loan. The record contains the following testimony:

"Q. [By respondent's counsel] *** When did the bank tell you that Cheryl's name had to be on the deed to the house as well as on the mortgage application?

A. [By respondent] I don't know whether they told me it had to be on the deed, but it had to be—okay, when we went over to [the lending institution] to make this out—*** and [an official of the lending institution] come up to me and said he wanted both our names on that, you know, for the mortgage purposes for them to insure payment and everything, and he wanted it put in both our names.

Q. On the mortgage?

A. He put it on both. He put both on everything.

Q. Did you ever tell him you didn't want Cheryl's name on the house?

A. I didn't really want it there, but it looked like that was the only way I could borrow the money to do it.

Q. Did you ever tell him you didn't want Cheryl's name on the house?

A. I don't remember.

Q. Did you ever tell Cheryl you didn't want her name on the house?

A. No, because that would have caused a big fight.

Q. Didn't you realize that Cheryl's name going on the deed was going to give Cheryl rights to the house?

A. No, I did not."

Respondent also testified that although the parties were represented by an attorney in the purchase of the home, the attorney neither explained joint tenancy or tenancy in common, nor told them what marital property was.

Petitioner testified that she went with respondent to the bank to make the loan application, and that no one at the bank told them either that her name had to be on the house or that both parties had to be on the loan. She also said that there was no discussion with the lawyer about putting the house in one name.

Respondent argues that his testimony that (1) the lending institution required both names to be on the deed, (2) he was not made aware of the effect of the transfer to joint tenancy, and (3) he had no intent to make a gift, was sufficient to overcome the presumption of gift to the marital estate. He places some reliance on the fact that the trial court did not expressly find that his testimony was not credible.

We note at the outset that the absence of such an express finding by the circuit court does not require reversal. A contrary rule would require a resolution of credibility in respondent's favor upon review, which we decline to do. It is well known that credibility issues are reserved to the province of the trial court, which had the opportunity to hear the testimony and observe the demeanor of the witnesses.

The cases cited by the trial judge, *In re Marriage of Rogers* (1981), 85 Ill. 2d 217, 422 N.E.2d 635, *In re Marriage of Atkinson* (1980), 82 Ill. App. 3d 617, 402 N.E.2d 831, *modified in other part* (1981), 87 Ill. 2d 174, 429 N.E.2d 465, and *In re Marriage of Wingader* (1981), 95 Ill. App. 3d 9, 419 N.E.2d 611, accurately reflect the law on point and support the result reached.

In *Rogers* it was stated that prior to the advent of the Illinois Marriage and Dissolution of Marriage Act (Act) (see Ill. Rev. Stat. 1983, ch. 40, par. 101 *et seq.*), a marital residence held in joint tenancy was generally regarded as owned by both spouses, even if one spouse furnished all of the consideration for it. The consideration-furnishing spouse was presumed to have intended a gift of one-half of the property. It was said that the gift presumption was one "of fact" which could be rebutted by "clear, convincing, and unmistakable evidence that no gift was intended." Under section 503 of the Act (Ill. Rev. Stat. 1983, ch. 40, par. 503), property acquired by either spouse after the marriage but prior to a judgment of dissolution is "presumed" to be marital property, regardless of how title is held. This presumption of marital property is overcome upon a showing that the property at issue was acquired by one of the exceptions enumerated in sections 503(a)(1) through (8). (Ill. Rev. Stat. 1983, ch. 40, pars. 503(a)(1) through (8).) As the *Rogers* court noted, the Act does not purport to change the law regarding interspousal transfers of property owned individually, and does not indicate, by implication or otherwise, any dissatisfaction with prior cases in which the intention of a spouse conveying property was ascertained. As stated in *Rogers*:

> "It may be anachronistic now to refer to an intent to convey a gift to the other spouse, but it is not improper to refer to an intent to convey a gift to the marriage. Therefore, a marital residence owned by both spouses, even if one spouse has furnished all of the consideration for it out of nonmarital funds, will be presumed 'in fact' as marital property, absent convincing rebutting evidence." (*In re Marriage of Rogers* (1981), 85 Ill. 2d 217, 223, 422 N.E.2d 635, 638.)

As applied to this case, the marital residence, having been acquired after the marriage, is presumed marital property irrespective of how

the title is held, until shown to have been acquired by one of the means excepted in sections 503(a)(1) through (8). *Section 503, as amended, does not, however, eliminate the presumption arising from the fact that title to the marital residence was taken in joint tenancy, i.e., that of gift to the marital estate.*

■ Respondent maintains that the presumption of gift to the marital estate is unreasonable as it presumed a gift of his entire estate, although petitioner offered no testimony to establish that a gift had been made. This argument misapprehends the role and function of the presumption. *Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 448 N.E.2d 872, addressed the effect of presumptions. A rebuttable presumption, such as exists here, is not evidence in itself, but arises as a rule of law or legal conclusion from the facts proved. Such presumptions do not shift the burden of persuading the trier of fact that the alleged fact is true. Their only effect is to create the necessity of evidence to meet the *prima facie* case created thereby, and which, if no proof to the contrary is offered, will prevail. The burden of persuasion remains with the party who initially has the benefit of the presumption; but the burden of production shifts to the other party once the presumption arises. If the presumption is then rebutted, the burden of production shifts back. In *Franciscan Sisters*, the court found it consistent with the Thayer bursting-bubble approach, followed in Illinois, that the party producing evidence to rebut the presumption must come forward with evidence that is " 'sufficient to support a finding of the nonexistence of the presumed fact.' (Graham, *Presumptions in Civil Cases in Illinois: Do They Exist?* 1977 S. Ill. U. L.J. 1, 24.)" 95 Ill. 2d 452, 463, 448 N.E.2d 872, 877.

■ An argument similar to that made by respondent was rejected in *Bruin v. Bruin* (1966), 72 Ill. App. 2d 51, 56-59, 219 N.E.2d 68, 71-72. In that case, the defendant husband claimed that since title was put in joint tenancy with his wife solely to satisfy the requirement of the bank before a loan would be made, there was no presumption of gift and no gift was intended or indicated. The husband sought to overcome the presumption of gift solely based upon the testimony regarding the policy of the bank to the effect that it desired to have the property in joint tenancy between husband and wife before making a loan. The *Bruin* court characterized the evidence offered by the husband as to his only reason for having the property placed in joint tenancy as "not only not clear, convincing and unmistakable evidence that no gift was intended, but on the contrary, [as] indecisive, ambiguous and unclear." (72 Ill. App. 2d 51, 58, 219 N.E.2d 68, 72.)

The *Bruin* court found *Scanlon v. Scanlon* (1955), 6 Ill. 2d 224, 127 N.E.2d 435, distinguishable and went on to state:

> "The conveyance of the property in this case involved a joint tenancy, and while the plaintiff did not advance any money toward the acquisition of the property she did perform services, and the presumption of a gift has not been overcome." (72 Ill. App. 2d 51, 59, 219 N.E.2d 68, 72.)

We find that respondent's testimony was neither conclusive nor convincing on the reason the property was taken in joint tenancy and, when the evidence is considered as a whole, the trial court was justified in finding for the petitioner.

▮ Respondent next argues that the trial court's ruling ignored the legislative intent in amendments to the Act to protect nonmarital property from unintentional transfer during marriage, and to limit the doctrine of transmutation discussed in *In re Marriage of Smith* (1981), 86 Ill. 2d 518, 427 N.E.2d 1239. He claims that the amendments reduced "the weight a trial court should afford the common law presumption of gift." As stated in *Franciscan Sisters*, a presumption is not evidence and cannot be treated as evidence. It cannot be *weighed* on the scale against evidence, but only function to shift the burden of production. (*Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 461-62, 448 N.E.2d 872, 876-77.) Respondent cites no authority and does not reference the particular amendment(s) to which his argument is addressed. We have, however, examined the amending legislation and reject respondent's argument on the merits.

Section 503(b) provides in part:

> "For purposes of distribution of property pursuant to this Section, all property acquired by either spouse after the marriage and before a judgment of dissolution of marriage or declaration of invalidity of marriage, including nonmarital property transferred into some form of co-ownership between the spouses, is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, or community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (a) of this Section." (Ill. Rev. Stat. 1983, ch. 40, par. 503(b).)

As to the effect of amendments incorporated in the above language, it has been stated:

> "Public Act 82—715, effective July 1, 1982, added the words

'For purposes of distribution of property pursuant to this section,' at the beginning of the first sentence of subsection (b). This amendment also inserted the phrase 'including non-marital property transferred into some form of joint tenancy' in the first sentence to expressly provide that non-marital property transferred into joint tenancy presumptively becomes marital property. The phrase 'joint tenancy' was subsequently replaced with the more inclusive phrase 'co-ownership between the spouses' by Public Act 83—129, effective August 19, 1983, to expand the forms of title into which non-marital property may be transferred from one spouse to both spouses in order to give rise to a presumption of marital property.

*These amendments are consistent with the ruling of the Supreme Court of Illinois in the case of In re Marriage of Rogers,* \*\*\* in which the Court held that the use of a husband's inheritance (non-marital property) to pay the downpayment of a home acquired in joint tenancy with his wife transmuted the inheritance into marital property. This transmutation into marital property was based on the traditional presumption of a gift applicable to the creation of joint tenancies. \*\*\*

However, it has been held that the mere co-signing of a mortgage note by one spouse on the other spouse's non-marital property is not equivalent to transferring the property into joint tenancy and does not transmute the property into marital property. *In re Marriage of Drennan,* 93 Ill. App. 3d 903, 418 N.E.2d 30 \*\*\* (4th Dist. 1981)." (Emphasis added.) (Ill. Ann. Stat., ch. 40, par. 503(b), Supplement to Historical & Practice Notes, at 48-49 (Smith-Hurd Supp. 1984-1985).)

Section 503(c) provides in part:

"Commingled marital and non-marital property shall be treated in the following manner, unless otherwise agreed by the spouses:

(1) When marital and non-marital property are commingled by contributing one estate of property into another resulting in a loss of identity of the contributed property, the classification of the contributed property is transmuted to the estate receiving the contribution, subject to the provisions of paragraph (2) of this subsection; provided that if marital and non-marital property are commingled into newly acquired property resulting in a loss of identity of the contributing estates, the commingled property shall be deemed transmuted to marital property, subject to the provisions of paragraph (2) of this subsection.

(2) When one estate of property makes a contribution to another estate of property, or when a spouse contributes personal effort to non-marital property, *the contributing estate shall be reimbursed from the estate receiving the contribution notwithstanding any transmutation; provided, that no such reimbursement shall be made with respect to a contribution which* [1] is not retraceable by clear and convincing evidence, or [2] *was a gift,* or, [3] in the case of a contribution of personal effort of a spouse to non-marital property, unless the effort is significant and results in substantial appreciation of the non-marital property. Personal effort of a spouse shall be deemed a contribution by the marital estate. The court may provide for reimbursement out of the marital property to be divided or by imposing a lien against the non-marital property which received the contribution." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 40, par. 503(c).)

As to the effect of amendments incorporated in this subsection, we find the language of section 503(c)(2) shows clearly that the legislature did not intend to mandate reimbursement upon dissolution for property which was gifted to the marital estate. See also Ill. Ann. Stat., ch. 40, par. 503(c), Supplement to Historical & Practice Notes, at 51-52 (Smith-Hurd Supp. 1984-1985).

The evidence in this case essentially raised two separate presumptions with respect to the marital residence. First, under the language of section 503(b), the fact that the residence was acquired after the marriage raised a presumption of marital property. This presumption could be overcome by respondent showing that the property was acquired by a method excepted in section 503(a) for nonmarital property. Under the case authorities, however, the fact that this property was taken in joint tenancy raised a separate presumption—that of gift to the marital estate, which presumption was not overcome in this case.

Affirmed.

MILLS and TRAPP, JJ., concur.