*In re* MARRIAGE OF RAY VICTOR CECIL, Petitioner-Appellant, and KAY CECIL, Respondent-Appellee.

Third District   No. 3—89—0802

Opinion filed September 5, 1990.

Charles R. Thomas, P.C., of Pekin, for appellant.

Marcia F. Straub and Robert H. Jones, of Robert H. Jones, Ltd., both of Peoria, for appellee.

JUSTICE LUND delivered the opinion of the court:

On October 5, 1988, the circuit court of Tazewell County entered a judgment dissolving the marriage of petitioner Ray Cecil and respondent Kay Cecil. On September 26, 1989, the court, following a hearing, entered a property division order. Petitioner now appeals, alleging the court improperly restricted his evidence and that the property was not divided in just proportions. We agree and reverse.

On February 16, 1985, the parties were married. On June 28, 1988, petitioner filed the original petition seeking a dissolution of marriage. On October 5, 1988, the matter was bifurcated by agreement, with the court entering an order dissolving the marriage and the question of distribution of the property being reserved.

The evidence adduced at subsequent hearings established that petitioner met respondent at the nursing home where his adult son is a resident. Respondent was employed there at the time, but she left that position after the marriage. She had previously worked at a beauty shop, as a real estate agent, and had an insurance license. At the time of the marriage the petitioner, a widower, owned a home referred to as the Ninth Street property. He also owned a cabin on Matanza Beach, a car, and a savings and stock plan through his employer, Central Illinois Light Company (CILCO). Respondent, a widow, also owned her own home and vehicle.

Shortly after the marriage, petitioner transferred the Ninth Street property into joint tenancy. He explained that respondent had been badgering him to do so. The court would not let him testify as to his intent or purpose for the transfer. This property was eventually sold and the proceeds of this sale, plus funds from petitioner's CILCO savings plan, were used to purchase an Edgewater Beach property on August 27, 1986. Both parties signed the contract to purchase. However, on the day of closing, respondent had moved out and could not be found. Accordingly, the property was placed in petitioner's name alone.

Respondent later returned and, according to petitioner, again began badgering him about having title to the real estate placed in joint tenancy. On September 29, 1987, they proceeded to the courthouse where respondent filled out a quitclaim deed wherein petitioner did place the property in joint tenancy. Petitioner presented the testimony of an employee in the recorder of deeds' office that at the time of signing the green sheet petitioner was nervous, shaky, and had a red face. He was unable to sign the form, so respondent did. Respondent presented testimony of the notary to the deed to the effect that she had observed nothing wrong when it was signed. Again, the court would not let petitioner present testimony as to his intent in signing the deed.

Shortly prior to this, petitioner sold the Matanza Beach property. They went from the courthouse and put $21,000 from that sale in a certificate of deposit (CD) in both names. On May 30, 1988, after 32 years of service as a lineman, petitioner retired from CILCO. At that time, he signed an irrevocable consent to give respondent survivor benefits, which reduced his retirement income by $133 per month.

Respondent sold her home to her daughter on October 22, 1987. She gave $10,000 to her daughter and to one son, explaining that she viewed this as their inheritance from their father's death. She agreed with her other son that, since the marriage was shaky, she would purchase another home and put it in his name to ensure he would get his inheritance. This home was purchased in January 1988 for $22,000 realized from the first sale, and respondent now lives there rent free. Respondent admitted not telling petitioner of the sale of the house until one month after it was done. She explained the house was a "stormy" subject which created marital problems.

The court determined that both the CD and the Edgewater Beach property should properly be considered marital property. The court awarded each party a one-half interest in the Edgewater Beach property and, following a deduction for due taxes, one-half interest in the CD. The court also equally divided the marital-service portion of the pension, the marital value of the savings plan, and the marital value of the stock plan. The court ordered respondent to return the survivor benefits of the pension plan to petitioner. Petitioner now appeals.

Petitioner's initial contention is that the court improperly limited his evidence. He attempted to present evidence as to his intent and purpose in placing the Ninth Street and Edgewater Beach properties in joint tenancy and placing the proceeds from the sale of the Matanza Beach property into a joint CD. The court would not allow him to do so. Petitioner believes this is incorrect because the proffered ev-

idence is relevant to the question of the presumption of a gift.

■■■ Section 503 of the Illinois Marriage and Dissolution of Marriage Act (Act) requires a court to classify property as either marital or nonmarital in order to assign or divide it upon a marriage dissolution. (Ill. Rev. Stat. 1989, ch. 40, par. 503.) Property acquired by either spouse after the marriage, but prior to the dissolution, is presumed marital property regardless of how title is actually held. (Ill. Rev. Stat. 1989, ch. 40, par. 503(b); *In re Marriage of Rogers* (1981), 85 Ill. 2d 217, 222, 422 N.E.2d 635, 638.) This presumption of marital property is overcome upon a showing that the property at issue was acquired by one of the exceptions enumerated in section 503(a) (Ill. Rev. Stat. 1989, ch. 40, par. 503(a)). *In re Marriage of Nagel* (1985), 133 Ill. App. 3d 498, 502, 478 N.E.2d 1192, 1195.

■■ ■ However, property designated as nonmarital pursuant to the exceptions of section 503(a) may still be presumptively transmuted into marital property by the affirmative act of the contributing spouse. (*In re Marriage of Benz* (1988), 165 Ill. App. 3d 273, 279, 518 N.E.2d 1316, 1319.) The principle of transmutation is based on the presumption that the owner of the nonmarital property intended to make a gift of the property to the marital estate. (*In re Marriage of Olson* (1983), 96 Ill. 2d 432, 439, 451 N.E.2d 825, 828.) Thus, the placement of nonmarital property in joint tenancy or some other form of co-ownership with the other spouse will raise a presumption that a gift was made to the marital estate, and the property will become marital property. (*Atkinson v. Atkinson* (1981), 87 Ill. 2d 174, 179, 429 N.E.2d 465, 467.) This presumption may be rebutted by clear, convincing, and unmistakable evidence that no gift was intended. *Benz*, 165 Ill. App. 3d at 280, 518 N.E.2d at 1319; *Nagel*, 133 Ill. App. 3d at 502, 478 N.E.2d at 1195.

In the present case, petitioner endeavors to establish that the Edgewater Beach property should properly be classified as nonmarital. To properly understand the issue, it is necessary to trace the acquisition of the Edgewater Beach property, which reveals three distinct events raising presumptions. Beginning with petitioner owning the Ninth Street property prior to the marriage, the evidence reveals (1) the Ninth Street property was placed in joint tenancy; (2) this property was sold and the Edgewater Beach property was purchased and placed in petitioner's name; and (3) this property was later placed in joint tenancy.

First, it is necessary to proceed in reverse order and address the impact of petitioner placing the Edgewater Beach property into joint tenancy. This raises the presumption of the presence of a gift to the

marital estate and the property is properly considered marital property. (*Benz,* 165 Ill. App. 3d at 280, 518 N.E.2d at 1319.) Thus, unless this presumption is overcome, it is clear the property has been properly classified regardless of the analysis at points one and two. As noted, this presumption can be rebutted by clear and convincing evidence. It was to this end that petitioner sought to testify as to his intent or purpose in placing the property in joint tenancy. The court refused to allow him to do so. We find this limitation in the evidence to be improper.

■■ ■ As a general rule, one element of a valid gift is an *intent* to make such a gift. (*Benz,* 165 Ill. App. 3d at 281, 518 N.E.2d at 1320.) More particularly to the question at hand, the supreme court has explained that the "principle of transmutation is based on the presumption that the owner of the nonmarital property *intended* to make a gift of the property to the marital estate" (emphasis added) (*Olson,* 96 Ill. 2d at 439, 451 N.E.2d at 828), and that this gift presumption could be rebutted " 'by clear, convincing, and unmistakable evidence that no gift was *intended*' " (emphasis added) (*Rogers,* 85 Ill. 2d at 221, 422 N.E.2d at 638, quoting *Baker v. Baker* (1952), 412 Ill. 511, 515, 107 N.E.2d 711, 713). Thus, it is clear the intent of the donor is not only relevant, but it is in fact the focal point of any discussion dealing with the presence or absence of a gift. This is further borne out by review of cases in which one party sought to overcome the presumption. Regardless of the success of their efforts, the question of the donor's intent was central to the discussion. (See, *e.g., In re Marriage of Thacker* (1989), 185 Ill. App. 3d 465, 541 N.E.2d 784; *In re Marriage of Nicks* (1988), 177 Ill. App. 3d 76, 531 N.E.2d 1069; *Benz,* 165 Ill. App. 3d 273, 518 N.E.2d 1316; *In re Marriage of Rink* (1985), 136 Ill. App. 3d 252, 483 N.E.2d 316; *Nagel,* 133 Ill. App. 3d 498, 478 N.E.2d 1192.) We cannot imagine evidence that is much more relevant to the question of donative intent than the testimony of the donor himself as to that intent. We do not mean to suggest that this testimony itself should be persuasive on the question. The court must still consider all the circumstances and other evidence in determining what weight to give to this testimony and in determining if the presumption has been overcome. However, this testimony should be admitted and considered. Comments by petitioner's counsel served as adequate offers of proof. Accordingly, we conclude the trial court erred by restricting petitioner's testimony as to his intent or purpose when he placed the property in joint tenancy.

■ Both parties urge us to rule on the merits of petitioner's argument that he has overcome the presumption. However, this ques-

tion is one of fact (*Nagel*, 133 Ill. App. 3d at 503, 478 N.E.2d at 1195), which is properly addressed by the trial court, which is in a better position to observe the witnesses' demeanor and resolve conflicting testimony. (See *Benz*, 165 Ill. App. 3d at 280, 518 N.E.2d at 1319.) Further, petitioner has not been able to present his full testimony. It is necessary, therefore, for the matter to be remanded to allow the court to consider all the evidence.

If the court, upon remand, determines the petitioner has not overcome the presumption, then the property is properly considered marital and the inquiry is closed. However, if the court finds the petitioner did rebut the presumption, then the other significant events mentioned earlier must be considered.

The second significant event was the purchase of the Edgewater Beach property, which was placed in petitioner's name alone. Since the purchase was made after the marriage, this property is presumed marital property unless one of the exceptions applies. (Ill. Rev. Stat. 1989, ch. 40, par. 503.) One such exception is if the property is acquired in exchange for property acquired before the marriage. (Ill. Rev. Stat. 1989, ch. 40, par. 503(a)(2).) In the case at bar, the evidence shows part of the purchase price came from petitioner's employee savings plan, which accumulated prior to the marriage, and the proceeds of the sale of the Ninth Street property, which petitioner owned prior to the marriage. Thus, unless some intervening act occurred, the Edgewater Beach property was acquired in exchange for property acquired before the marriage, and the presumption has been overcome.

The placement of the Ninth Street property into joint tenancy, event number one, may have been just such an intervening act. This also raises the presumption of a gift to the marital estate and transfers nonmarital property into marital property. Thus, unless this presumption is rebutted, the Edgewater Beach property was purchased in part with marital funds, and the acquisition-after-marriage presumption cannot be overcome. Petitioner attempted to present testimony as to his intent in placing the Ninth Street property in joint ownership, and the court refused to allow him to do so. The same gift analysis presented earlier is applicable here. We similarly conclude that the court erred by so limiting the testimony concerning this transfer.

We likewise observe the same error occurred in regard to the sale of the Matanza Beach property. Petitioner owned this property prior to the marriage, and the proceeds of the sale are clearly nonmarital. However, these proceeds were placed in a joint account, which presumptively transmutes it into marital property unless petitioner can

overcome the presumption. The intent evidence is again relevant and admissible.

Accordingly, we conclude the cause must be remanded for the court to consider petitioner's evidence as to his intent in placing the properties in joint tenancy and the funds in a joint account in determining if petitioner has overcome the presumption of marital property.

Petitioner also argues the court-ordered property distribution is inequitable. As noted, the court ordered respondent to return the survivor's benefit of petitioner's pension to him. The parties also agreed to the division of the marital personal property. The court divided all the remaining marital assets, being the Edgewater Beach property, the CD, and the marital portion of his pension, savings, and stock plan equally. While this division is, of course, subject to change upon remand based on our earlier analysis, in order to be of some guidance to the court we feel we should express our serious reservations about this division.

■■ ■ Section 503(d) of the Act allows the court discretion to divide marital property into what it considers "just proportions," taking into account all listed factors as well as any other factors deemed relevant in a particular case. (*In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 37, 411 N.E.2d 238, 241.) The trial court has broad discretion in the distribution of marital assets, and such discretion will not be disturbed absent clear abuse. (*In re Marriage of Rapacz* (1985), 135 Ill. App. 3d 1045, 1048, 482 N.E.2d 441, 443-44.) The requirement that the division be in just proportions does not mandate equal distribution between the parties. (*Aschwanden*, 82 Ill. 2d at 37, 411 N.E.2d at 241.) The touchstone of proper apportionment is whether it is equitable in nature (*In re Marriage of McNeeley* (1983), 117 Ill. App. 3d 320, 325, 453 N.E.2d 748, 752), with each case resting on its own facts. *In re Marriage of Bentivenga* (1982), 109 Ill. App. 3d 967, 972, 441 N.E.2d 336, 340.

While the court in its order indicated it considered all the appropriate factors, we believe that, under the factual circumstances of this case, two of the enumerated factors should be given special consideration.

■■ The first is the contribution or dissipation of each party in the acquisition of the marital and nonmarital property, including the contribution of a spouse as homemaker. (Ill. Rev. Stat. 1989, ch. 40, par. 503(d)(1).) In the present case, the evidence clearly establishes that the contribution toward the acquisition of the property came entirely from petitioner. In fact, the only item involved that respondent

"owned" was the irrevocable survivor benefit from the pension. However, this also came from petitioner. We acknowledge the greater financial contributions alone will not automatically entitle that spouse to a greater distributive share of the marital assets (*Rapacz*, 135 Ill. App. 3d at 1049, 482 N.E.2d at 444), and that the spouse's contribution as a homemaker should be considered (*Aschwanden*, 82 Ill. 2d at 37, 411 N.E.2d at 241). However, in this case, the evidence establishes the marriage lasted three years, and respondent moved out of the home at least six times. Thus, her contribution in this regard would seem appropriately devalued.

Also, this factor refers to the dissipation of marital and nonmarital property. Respondent owned a home prior to the marriage worth at least $52,000. While, as nonmarital property, it is hers to do with as she pleases, the evidence shows she sold it without petitioner's knowledge and distributed the assets to her children. She now lives in the house purchased with part of those assets, though it is in her son's name. While technically she may therefore have no nonmarital assets, this conduct should be considered in the distribution. It is inequitable to allow her to dissipate her nonmarital estate in view of marital difficulties, and then to receive a larger distribution than that to which she would normally be entitled simply because she had little nonmarital property at the time of the dissolution.

We are also concerned with the factors relating to the duration of the marriage. (Ill. Rev. Stat. 1989, ch. 40, par. 503(d)(3).) In a long-term marriage, the source of the assets in acquiring marital property becomes less of a factor and a spouse's role as the homemaker becomes greater. Here, as noted, the marriage is very short term and respondent's input as homemaker was limited at best.

We are aware there are other factors to be considered, such as the fact this distribution was made in lieu of maintenance (Ill. Rev. Stat. 1989, ch. 40, par. 503(d)(9)) and the survivor benefit in the pension which respondent owns. Clearly, if she is ordered to return that, she is entitled to some of the other assets as compensation. However, respondent is 54 years of age, has a range of experience and employable skills, and lives rent free in a house owned by her son. The petitioner is a retired 59-year-old with some savings who is living on a fixed pension. These matters also need to be considered. See Ill. Rev. Stat. 1989, ch. 40, par. 503(d)(7).

Accordingly, upon remand, after making the initial determination concerning characterization of the property, the court, when determining an appropriate distribution, should reconsider the factors discussed above. The ultimate goal is to have an equitable distribu-

tion. (*McNeeley*, 117 Ill. App. 3d at 325, 453 N.E.2d at 752.) Here, due to the short-term marriage, the age of the parties, and the non-marital property respondent disposed of, an even division of marital property will not accomplish that goal.

Reversed and remanded.

GREEN and STEIGMANN, JJ., concur.