Lola Stegeman, Charlotte Becks and Marjorie Howell, Plaintiffs-Appellees-Cross Appellants, v. Isabel Smith and John T. Reardon, Executor of the Last Will and Testament of L. R. Smith, Deceased, Defendants.

Isabel Smith, Defendant-Appellant-Cross Appellee, and John T. Reardon, Executor of the Last Will and Testament of L. R. Smith, Deceased, Defendant-Appellee-Cross Appellee.

Gen. No. 10,649.

Fourth District.

February 21, 1966.

Rosenberg, Rosenberg & Bickes, of Decatur, for appellant.

H. David Condron and Inghram & Dittmeyer, all of Quincy (John T. Inghram, of counsel), for appellees.

CRAVEN, J.

The plaintiffs, Charlotte Becks, Lola Stegeman and Marjorie Howell, are the children, by a former marriage, of one L. R. Smith who died testate on April 22, 1954, while married to the defendant, Isabel Smith. The suit was for partition and other equitable relief in respect to a tract of ground in Quincy, Illinois, having a frontage on Spring Street of 78 feet and a depth of 170 feet.

The decedent was the sole owner of a portion of the tract having a 60-foot frontage (referred to in the evidence as tract one). The decedent and his wife, Isabel Smith, the defendant, acquired the adjacent portion, having an 18-foot frontage (referred to in the evidence as tract two), by warranty deed dated September 29, 1949, as joint tenants and not as tenants in common.

In 1950 and 1951, a residence having a 68-foot frontage was built on the tract, approximately 55 feet of the residence being built on tract one and 13 feet on tract two. Decedent and his wife occupied the residence as a home until his death.

L. R. Smith's will, which is dated December 3, 1952, is as follows:

> "This written statement is to instruct my attorney Mr. John T. Reardon how I would want my estate divided in case of my death. He shall have the power

453

to serve as administrator with giving surity [sic] bond and is to be paid a reasonable fee. Now here is the way I would want my estate handled. I would want it all converted to cash as soon as it could be done in a sound business way, which consists of my automobile business which can be sold to a good advantage on present market also my home located at 2012 Spring St. Quincy, Ills. which cost me $47,500 after this is done here are my requests. First that at least $1000 for my burial exp and am to be placed beside my former wife Dora Smith as near like she was put away as possible.

"$300.00 to the First Christian Church at 14th Maine to be used for church maintance [sic].

"$4,000.00 to each and every one of my grandchildren to be put in trust until they reach their 18th Birthday and then is to be paid to them.

"$500.00 to Marie Smith, a sister, $500.00 to Lillie Reeder, no relation. $300.00 to Carson Smith, a brother to be used as burial expense for him only.

"$500.00 to Glenna Grover for her faithful duties to the L. R. Smith Motor Co.

"$200.00 to Eleanor Willer for her faithful service in taking care of my home.

"My insurance is made to my three daughters. The remainder of the estate is to be divided in equal shares between Charlotte Becks, Lola Stegeman, Marjorie Howell, Isabel Smith, my wife and daughters. [Crossed out portion.] Each daughter is to pay their bills now owing to the company from their share of the estate then that shall be divided in four equal shares to the wife and three daughters [crossed out portion]. Jack, I know you will see that this is done, Glenna can give you all the information about

the business. Oh, yes there are about $3000.00 in Goverment [sic] Bonds in Safety Box at Ill. National Bank."

Isabel Smith, defendant, widow of L. R. Smith, renounced the will and elected to take her statutory share July 22, 1954, and has continued in possession of the entire premises to this date.

The parties have been unable to reach any agreement for division or settlement.

One appraiser testified that the lot (78-foot frontage) had a value of $60 per front foot or $4,680, that the reproduction cost of improvements would be $38,636 for a total cost of $43,316. He placed the present market value at $30,000, assigning $1,080 land value and $6,172 improvement value to the 18-foot strip. This strip could not be used alone as a residence because, by the terms of a zoning ordinance, a residence was required to have 6,000 square feet of lot area. The appraisal testimony was not controverted.

It appears to be conceded that neither tract one nor tract two could be sold separately without great sacrifice and it is apparent that the improvements consist of one functionally unified residence building.

The decree of the circuit court of Adams County followed the recommendation of the master-in-chancery which denied partition, denied a resulting trust and found a mutual mistake in the building of the house which gave rise to equitable jurisdiction based upon broad equitable principles, and ordered a sale of tracts one and two in a single sale. The decree found 24.17335% of the value to be in the 18-foot tract and 75.82665% of the value to be in the 60-foot tract. It ordered the taxes, which had been advanced by the executor, in the sum of $4,710.42, deducted from the proceeds of sale, the payment of $1,000 homestead exemption to the defendant, Isabel Smith, and the balance of proceeds after deducting costs of this pro-

ceeding to be paid 24.17335% to the defendant and 75.82665% to the executor for administration through the estate.

The other assets of the estate amount to approximately $39,000. The executor states that there are not sufficient funds to pay the widow's award that may be allowed, the widow's one-third of the personal property and also the legacies.

Both defendant and plaintiffs appeal from the decree. The defendant contends that the court had no jurisdiction to order the sale of tract two, the 18-foot strip. The plaintiffs contend that the court should have ordered the taxes paid by defendant during the period of her use.

The defendant contends that there is no basis for the finding of either mutual mistake or any mistake of fact that would be actionable and that the decree of court ordering the sale of tract two, the 18-foot strip, is in effect an invalid exercise of private eminent domain.

The plaintiffs contend that the finding of mistake was supported by the evidence, that a mistake to ground equity jurisdiction need not be mutual, that equity will act to prevent unjust enrichment, that equity will not suffer a wrong without a remedy, and that there need not be an exact precedent to justify equitable relief.

This is a case of first impression and, indeed, does have an initial appearance of a legal labyrinth. It would seem, however, that the appropriate procedure would be to investigate, first, whether there is a fact situation which ought, in fairness, and in the orderly administration of justice, to have judicial relief and, secondly, whether the application of some remedy would create such additional problems that it ought not to be attempted.

The salient facts are that descendants of the testator, who are entitled to approximately two-thirds of the testator's estate, have been deprived of their lawful inheritance

for more than eleven years. Their property rights become illusory.

No progress has been made in the eleven years to break the impasse which has been reached. One of the chief assets, which is slightly more than one-third of the estate, is improved real estate which is subject to depreciation, obsolescence and waste. The estate, while deriving no benefit therefrom, is being slowly dissipated in the payment of taxes, the sum of $4,710.42 having been expended to date. The defendant widow, while being legally entitled to only a fraction of the value of the residence, has in effect the full undisturbed use thereof to the detriment of persons entitled to their share of this asset.

No remedial statute or any exact precedent has been cited for breaking this impasse. However, the reasons behind the somewhat analogous equitable precedents exist in this case. For example, the reason for partition is to enable those who own property in common to sever their interests so that one may take possession of and enjoy and improve his separate estate at his own pleasure and convenience. Bowman v. Austin, 393 Ill 593, 596, 67 NE2d 168. Mechling v. Meyers, 284 Ill 484, 487, 120 NE 542. Whenever a partition is in fact authorized and it appears that the premises are not susceptible of division, a sale is authorized. When a division in kind is practical but the shares are not exactly equal, an equalizing payment is authorized. Where one improves the land of another by mistake he has variously been given an equitable lien for the cost of the improvements or the enhanced value of the premises or a right to purchase the premises if the owner elects to sell. Pope v. Speiser, 7 Ill2d 231, 238, 130 NE2d 507; Olin v. Reinecke, 336 Ill 530, 534, 168 NE 676; Elder v. Clarke, 385 Ill 335, 340, 52 NE2d 778; Clark v. Leavitt, 335 Ill 184, 187, 166 NE 538; Wakefield v. Van Tassell, 218 Ill 572, 576, 75 NE 1058. 57 ALR2d 263, et seq. The cases emphasize unjust

enrichment and do not require a *mutuality* of mistake. Sometimes emphasis is placed upon the fact that the owner stood by and permitted the improvements. Fitzpatrick v. Allied Contracting Co., 24 Ill2d 448, 455, 456, 182 NE2d 183.

■ While no specific statutory authority is conferred to exercise dominion over the property of one person in favor of another, an analogous power is conferred upon courts to equalize legacies where a disproportion has resulted among legatees from the exercise of the right to renounce a will. Also, while no specific authority is conferred, in the present situation, equity exercises jurisdiction over property rights of married persons.

■■ It is the general policy of the law that the probate and settlement of estates be accomplished with expedition and that parties be placed in possession and enjoyment of their inheritance as quickly as possible. It is the further policy of the law that the intention of the testator be effected.

In this case there is some evidence from which the trial court could have found that the testator built upon the ground under the mistaken belief that it was entirely owned by him. That evidence is contained in the will in which he refers to the property as "my home which cost me $47,500."

■■ The defendant widow in this case elected to take her statutory share and thus elected to become a tenant in common in respect to the greater part of the residence property with other heirs. She also became, in effect, a tenant in common in the personal property. The circumstance that defendant survived the decedent is an accident and by reason of this accident the ownership, instead of being single in L. R. Smith, is divided both physically and in interest—but not in possession and enjoyment.

■ In this case, additionally, defendant's single ownership is of a strip only 18 feet wide in a residential

458

zoning classification where such property would not qualify separately for use as a residence but only in connection with sufficient adjacent property to make 6,000 square feet. The property is improved with an improvement of much greater value than the land itself and is unified with a more valuable piece of ground on which there is also an improvement of much greater value than the ground. If the 60-foot tract were sold and a partition wall erected, or the improvement removed on the line of the 18-foot tract, the 18-foot tract would be practically valueless.

Therefore, in answer to our first inquiry, the answer to the question whether there are equitable considerations which demand relief if possible is decidedly in the affirmative.

The second inquiry is whether, in granting the relief which involves the exercise of powers over individually owned property [tract two, the 18-foot strip], the court would be violating constitutional rights or creating such a dangerous precedent that it should not be done—even if clearly indicated. Would the cure be worse than the disease? We think not.

The court is familiar with the frequently stated rule that partition would lie only between common or joint owners. Stevenson v. Bachrach, 170 Ill 253, 47 NE 327; McConnel v. Kibbe, 43 Ill 12. Annotation 28 ALR 727, esp. 732. Whether a different result might be achieved in different circumstances, it is true that in neither of those cases were the peculiar circumstances present that obtain here. In McConnel v. Kibbe, 43 Ill 12, while the ownership of the buildings overlapped the ownerships of the land, nevertheless, the parties had by elaborate description of lands, buildings and easements, made two separately usable properties. But the rules with reference to strict partition have not prevented the courts from imposing an unwanted lien for the value of improvements upon an individual's property, as in Pope v. Speiser, 7

Ill2d 231, 130 NE2d 507, and the other cases cited above in the same connection.

█ We do not hold that wherever there is a building erected over a divided land ownership there may always be relief in equity. We do not take that to be the law. Additionally, while one equitable consideration which lacks a requirement for equitable relief is a reason for denying relief, it does not follow that numerous equitable considerations, which each in themselves might fail as a *sole* basis for relief, might not in total constitute a strong basis for equitable relief. One silken thread will not hold a ship in a storm but sufficient threads can create a hawser. One nagging remark is not a justification for a husband to leave but Xanthippe could make Socrates put on his hat and go for a walk.

█ Nor are we required to find an exact precedent for action which equitable considerations demand. In First Nat. Bank of Chicago v. Bryn Mawr Beach Bldg. Corp., 365 Ill 409, 421, 6 NE2d 654, the Supreme Court of Illinois said:

"The above and similar cases, though not deciding the question here, evidence a recognition by this court that rules of equity jurisdiction have developed and are developing, and that judicial proceedings must be adjusted to facts as they are. All who are conversant with the history of equity jurisprudence know that as a distinct system it has been of constant growth and development from its inception, covering a period of hundreds of years. 'The jurisdiction of a court of equity does not depend upon the mere accident whether the court has, in some previous case or at some distant period of time, granted relief under similar circumstances, but rather upon the necessities of mankind, and the great principles of natural justice, which are recognized

460

by the courts as a part of the law of the land, and which are applicable alike to all conditions of society, all ages, and all people.' " (Citation omitted.)

 We hold that the plaintiffs are entitled to have the interests severed in such a manner that the major portion of the value of this unified asset will not be destroyed, even though, as an incident to this relief, the property of the defendant may have to be sold with the property of the plaintiffs. The plaintiffs should not, however, be given the election in this matter. The situation, so far as appropriate relief is concerned, seems more analogous to Fitzpatrick v. Allied Contracting Co., 24 Ill2d 448, 182 NE2d 183, than to a standard partition suit.

The defendant should be given an election to purchase the 60-foot tract with the improvements thereon for the sum of $22,748, taking credit against this price, if she also so elects, any one or all of the following: (a) her widow's award, (b) the value of her homestead interest, (c) her statutory one-third interest in the realty and (d) her statutory one-third interest in the personal property. The defendant should likewise be charged with the real estate taxes paid by the executor from 1954 to 1963, in the amount of $4,710.42 and one-half of the costs of this proceeding. Such election should be made in writing within 60 days from the decree fixing her rights. In the event the defendant does not elect to purchase the 60-foot tract with its improvements, as aforesaid, the entire 78-foot tract with the improvements should be ordered sold and the proceeds of sale, subject to the cost of sale, should be allocated 75.82665% to the 60-foot tract and 24.17335% to the 18-foot tract. In any event, defendant should be charged with the taxes advanced by the executor, as aforesaid, and one-half of the costs of this proceeding.

■■■■■■

Reversed and remanded with directions to enter a decree in accordance with directions herein.

TRAPP, P. J. and SMITH, J., concur.