2 Ill. App.3d 458 (1971)
276 N.E.2d 725
JOHN KOBUS, Plaintiff-Appellant,
v.
JEFFERSON ICE COMPANY, Defendant-Appellee.
No. 71-19.
Illinois Appellate Court  Second District.
December 15, 1971.
Warren Fox, of Waukegan, for appellant.
Soffietti & Johnson, of Fox Lake, (Jerome D'Isa, of counsel,) for appellee.
Reversed and remanded.
Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:
The plaintiff brings this appeal from an order of the circuit court of Lake County that dismissed his small claims complaint brought against his former employer.
The plaintiff was hired by the defendant in June, 1969, to work as a driveway serviceman in a gasoline service station owned by the defendant in Lake County. He was paid $1.90 an hour for his services until October, 1969, when the pay was increased to $2.25 an hour. On November 1, the plaintiff was made acting manager of the station. On January 1, 1970, he was made full manager and his pay increased to $600.00 a month and a commission on gross sales. He continued to work as manager until his resignation in May, 1970.
At the time of his employment, the plaintiff executed an employment contract prepared by the defendant in the following form:
*459
 "Date ______________________
"It is understood by the undersigned, who is to be an employee of Jefferson Ice Company, Depot # ________, ________, Ill., on the above date, that he is liable for his share of any and all shortages over and above 25¢ per shift paid by Jefferson Ice Company on the shift or shifts he has worked."
The plaintiff paid his "share" of shortages of the defendant in cash before he received his pay check at the end of each two week pay period. From the start of his employment until his promotion to full manager, the plaintiff paid a total of $235.00 to the defendant for shortages.
As manager, the plaintiff was to approve all checks cashed by driveway servicemen by placing his initials in the corner of the checks. During the month of November, 1969, while the plaintiff was acting manager, a number of worthless checks were cashed at the station in a total amount $774.29. Although the checks had not been approved by the plaintiff or, apparently, cashed while he was on duty, he signed a wage assignment to the defendant in that amount several weeks before he was promoted to full manager. Thereafter, the sum of $430.00 was deducted from his pay by the defendant on the basis of the assignment. After his termination, the plaintiff brought suit to recover the amounts paid by him or deducted from his pay. The trial court found that the defendant was entitled to the monies and dismissed the complaint. This appeal followed.
The first contention advanced by the plaintiff is that the purported employment contract, in view of the unequal standing of the parties, was oppressive and unconscionable and should not be enforced. The defendant, on the other hand, argues that the contract was clear and unambiguous and should not be set aside merely because one party became unhappy with its terms. The defendant states further that the purpose of such an agreement was to assure that the employees at the station would maintain a surveillance of their fellow workers to detect and report any acts of dishonesty. It is not necessary, however, to rule on the validity of the agreement since the facts disclose that the agreement in actuality was not followed by the defendant.
The stipulated facts show that the station was open daily from 6:00 A.M. to either 10:00 or 12:00 P.M. depending on the volume of business. Although these hours would normally constitute a two-shift operation, the actual hours worked by the various employees overlapped since some men worked part time and others overtime. As many as six or eight employees might have worked during any day and no *460 attempt was made to segregate either their individual sales or receipts.
Although the station manager could "read" the pumps at any time to determine the volume of gasoline sold, this was ordinarily done only at the start and close of the business day. The cash received by the servicemen was commingled in a common register and counted at the end of the day. Thus, the computation of any shortage (the difference between the amount of gas pumped and cash received) was computed not on a shift basis, as contemplated by the employment agreement, but on a daily basis.
The agreement provided that the employee would be responsible for the repayment of his "share" (and it is not clear how his "share" could be determined) of any losses incurred during the hours he actually worked. As the defendant points out, the obvious purpose of this provision was to compel the plaintiff to keep a watchful eye on the conduct of his fellow workers. Under the system actually followed it was of course impossible to ascertain when the losses occurred and who was on duty at the time. The plaintiff testified, without contradiction, that none of the shortages resulted from his own conduct or with his knowledge. Under these circumstances, the rationale for the agreement simply did not exist since there was no conceivable way that the plaintiff could logically be responsible for shortages that could have occurred while he was not on duty.
 1, 2 It is commonplace contract law that a party cannot have the benefits of a contract unless he has also performed the obligations. (Ross v. Danter Associates, Inc., 102 Ill. App.2d 354, 361, 242 N.E.2d 330; Nation Oil Co. v. R.C. Davoust Co., Inc., 51 Ill. App.2d 225, 238.) If the plaintiff was to be responsible for losses incurred during the hours he worked, the defendant had the obligation to provide some suitable method to allocate the losses to those hours he was on duty.
Section 39.1 of Chapter 48 of the Illinois Revised Statutes (Ill. Rev. Stat., 1969, ch. 48 par. 39.1) provides that "No assignment of wages earned or to be earned is valid unless * * *. (2) Given to secure an existing debt of the wage earner or one contracted by the wage earner simultaneously with its execution;."
As already mentioned, the plaintiff, in his capacity as manager, was to approve all checks cashed at the station. Although the defendant admits that the worthless checks were not approved by the plaintiff, they contend that he "assumed" the responsibility for them when he executed the assignment. This argument clearly begs the question since the assignment itself would be invalid unless given to secure an existing debt or one contracted at the time of execution.
 3 It is clear that the plaintiff was not indebted to the defendant for *461 the repayment of the checks since they were cashed without his approval or knowledge. Since it is admitted by the defendant that no other consideration was given to the plaintiff at the time he executed the assignment, his "assumption" of the debt was gratuitous and unenforceable. For those reasons we agree that the purported wage assignment was invalid and that it was improper to deduct a portion of the wages due the plaintiff from his pay.
We therefore conclude that the judgment of the trial court was in error and the matter is reversed and remanded with instructions to enter judgment in accordance with the view expressed in this opinion.
Reversed and remanded.
SEIDENFELD and GUILD, JJ., concur.