*In re* ESTATE OF ANTHONY J. IERULLI, Deceased (Lydia Ierulli, as Ex'r of the Estate of Anthony J. Ierulli, Executrix-Appellant, v. First National Bank of Peoria, as Trustee, Claimant-Appellee).

Third District   No. 3—87—0545

Opinion filed April 5, 1988.

WOMBACHER, J., dissenting.

Nile J. Williamson and Joseph R. Napoli, both of Peoria, for appellant.

Safford, West, Tornow & Jaeger, of Peoria (Philip L. Jaeger, of counsel), for appellee.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

The claimant, First National Bank of Peoria (First National), filed a claim against the estate of Anthony Ierulli seeking recovery of cash and premium loans, accumulated interest, and dividend withdrawals totalling $108,277.88. These funds were to become the corpus of a life

insurance trust agreement entered into upon the dissolution of the marriage of Anthony and Elaine Ierulli and of which First National was the trustee. After a bench trial, judgment was entered for the claimant in that amount plus interest and the executrix has appealed. The executrix, Lydia Ierulli, contends that (1) the decedent's former wife, Elaine, was precluded from testifying under the Illinois Dead Man's Act as codified in section 8—201 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 8—201), and (2) First National, as trustee, was entitled only to the net proceeds of the policy in accordance with its terms but was not entitled to recover the loans, interest, and withdrawals which comprised its claim.

First National is the trustee for the four Ierulli children under the life insurance trust agreement established by Anthony and funded upon his death by a life insurance policy. This trust was executed pursuant to the terms of the judgment of dissolution of marriage of Anthony and Elaine. Under the terms of the judgment, Anthony was to

"immediately execute a Life Insurance Trust Agreement consisting of a policy of insurance upon his life with the Vermont Life Insurance Company in the face amount of Two Hundred Fifty Thousand ($250,000.00) Dollars, wherein the First National Bank of Peoria, Peoria, Illinois is to be the Trustee, and which Trust upon his death shall provide income for the maintenance, support and education of the said children until they attain the age of thirty (30) years, at which time each child as he or she attains the age of thirty (30) years shall receive his proportionate share of the Trust Principal and accumulated income, and the Defendant is to pay the premium as it becomes due on said Policy of Insurance."

The trust agreement, which First National claims Anthony violated and which brings rise to this cause, provides:

"2. The Settlor shall have full power at all times during his lifetime, provided that he give the said Elaine J. Ierulli, her Administrator, Executor or Legal Representative, at least thirty (30) days written notice of his intention to exercise such powers:

(a) to exercise any option, election, right or privilege given to the Settlor by any of said Policies, including the right to change the beneficiary therein, to borrow any sums of money in accordance with the provisions thereof, to use any of said Policies, including the death benefits thereunder, as security for any purpose whatever, to receive any dividends, earnings or

other payments on any of said Policies and to surrender any of them for its cash surrender value, in each case without the consent of the Trustee, or of any beneficiary under the Trusts herein created."

First National contends that, because Anthony did not give the required notice to Elaine prior to making the withdrawals or taking out the loans, he violated the terms of the trust. First National then asserts that this gives it the right, as trustee, to recover those funds.

Upon Anthony's death, First National received $316,684.22 as principal and $1,420.65 as post death interest from the insurance company pursuant to the trust agreement. At the time of Anthony's death there was a balance of loans, unpaid interest and withdrawn dividends in the amount of $108,367.88. First National filed its claim and was awarded $124,132.16 as satisfaction for its claim plus interest.

On appeal, Lydia contends that the trial court erred when it permitted Elaine to testify that she had never received the notice from Anthony required under the terms of the trust agreement. She claims that the bar to her testimony is contained in the Dead Man's Act. She further asserts that First National is entitled only to those proceeds received from the insurance company and not to any additional funds from the estate.

■■ Initially, we note that there is nothing in the Dead Man's Act which would preclude Elaine from testifying to the fact that she did not receive notice of Anthony's transactions. Section 8—201 of the Code of Civil Procedure reads, in pertinent part, as follows:

"Dead-Man's Act. In the trial of any action in which any party sues or defends as the representative of a deceased person *** no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased *** or to any event which took place in the presence of the deceased *** except in the following instances:

* * *

As used in this Section:

* * *

(c) 'Person directly interested in the action' or 'interested person' does not include a person who is interested solely as executor, trustee or in any other fiduciary capacity, whether or not he or she receives or expects to receive compensation for acting in that capacity." Ill. Rev. Stat. 1985, ch. 110, par. 8—201.

Under this statute, since Elaine was not an adverse party, our only consideration is whether she was a "person directly interested in the action." In order to disqualify a witness as one directly interested in the action, the witness' interest in the judgment must be such that some pecuniary gain or loss will come to the witness directly as an immediate result of the judgment. The interest of the witness must be direct, certain, and pecuniary. (*Michalski v. Chicago Title & Trust Co.* (1977), 50 Ill. App. 3d 335, 365 N.E.2d 654.) In this case, the beneficiaries of the trust were Elaine's children. Therefore, she is not a "person directly interested in the action." Further, Elaine was called to testify on behalf of the bank on its claim to the funds. We would point out here that the statute, by its own language, only precludes persons from testifying on their own behalf. (See *Bank of Viola v. Staley* (1985), 131 Ill. App. 3d 531, 475 N.E.2d 1110.) We conclude that the trial court was correct in permitting Elaine's testimony.

■ Our last point of consideration is to determine exactly what funds First National is entitled to receive from the insurance company and the estate. As to the $316,684.22, Illinois case law on this point is scarce, but the available authority is applicable to the present matter. In *In re Schwass* (1984), 126 Ill. App. 3d 512, 467 N.E.2d 957, the First District Appellate Court was confronted with a situation where a marital settlement agreement required that the husband name his children as equal irrevocable beneficiaries on all existing insurance policies. The husband then remarried and named his present wife as beneficiary on all his insurance policies. When he died, the insurance company paid the proceeds to the widow and the children brought suit to enforce the terms of the marriage settlement. The insurance policies had a face value when originally issued of $26,000. The value of the policies in existence at the husband's death totalled $68,000.

The *Schwass* court, holding that the children from the first marriage had a superior equitable interest in the proceeds of the insurance policies, deemed their interest to extend to the entire proceeds and that it was not limited to the face value of the policies as in effect at the time of their issue. Citing the Nevada case of *McKissick v. McKissick* (1977), 93 Nev. 139, 560 P.2d 1366, the *Schwass* court stated that the increase in benefits belonged to those persons for whose benefit the insurance was required to be carried, notwithstanding that the benefits had tripled due to the manner of the decedent's death. (*Schwass*, 126 Ill. App. 3d at 517, 467 N.E.2d at 961.) The court noted that the agreement provided that the decedent's minor children were to be beneficiaries of the insurance policies, not of any specified dollar amount, and a constructive trust was imposed on the

entire amount of the proceeds.

The situation in this case is similar. Although the agreement stated that the insurance policy was to carry a face value of $250,000, it did not say that the children were to receive only a specified dollar amount. Instead, the Ierulli's judgment of dissolution stated that the policy was to supply support and maintenance until the age of 30, and that the children were then to receive their proportionate share of the trust principal and accumulated income. Therefore, we hold that First National was not limited on its claim by the face value of the policy recited in the judgment of dissolution and that it is entitled to the full amount received from the insurance company.

■■ ■ This theory, however, does not address the amounts claimed by First National as the loans, interest, and withdrawals taken by Anthony in violation of the notice provisions of the trust agreement. The answer to this question must be determined by examining the trust agreement itself.

The rules of construction which apply to the interpretation of contracts apply to the construction of trust instruments as well. (*Northern Trust Co. v. Tarre* (1981), 86 Ill. 2d 441, 427 N.E.2d 1217; *In re Estate of Seward* (1985), 134 Ill. App. 3d 412, 480 N.E.2d 201.) The provisions of the trust instrument are not to be read in isolation and the court must not limit its consideration to the language of a particular paragraph, phrase, sentence, or clause. (*In re Support of Halas* (1984), 104 Ill. 2d 83, 470 N.E.2d 960.) However, it is not the function of the court to modify the document or create new terms different from those to which the parties have agreed. *Northern Trust Co. v. Tarre* (1981), 86 Ill. 2d 441, 427 N.E.2d 1217.

In this case, there was no provision in the trust agreement itself which provided for the repayment of the loans or withdrawals. Nor did the agreement specify the amount of or calculation for damages in the event that Anthony violated the notice provision of the agreement. Therefore, we will not add terms to the agreement which call for the repayment of the loans and withdrawals because the basic intent of the trust has been satisfied. We can speculate that, had the proceeds from the insurance policy been less than its face value, Elaine may have had some recourse to recover those sums necessary to form the $250,000 corpus of the trust. However, there is no need to address that issue here since the proceeds of the policy satisfied the agreement contained in the judgment of dissolution. Therefore, First National is not entitled to the $108,367.88 that it claims from the estate.

For the foregoing reasons, First National's claim is denied and

the judgment of the circuit court of Peoria County is reversed.

Reversed.

SCOTT, J., concurs.

JUSTICE WOMBACHER, dissenting:
I disagree with the majority's treatment of the trustee's claim seeking $108,277.88.

Under the terms of the trust agreement, Elaine Rosier was to receive 30 days' written notice of her former husband's intention to exercise any powers or rights with respect to the insurance policy. The right to such notice even survived Mrs. Rosier's death or disability and was to go to her administrator, executor or legal representative.

As the majority opinion states, it is well established that the rules of construction which apply to the interpretation of contracts apply to the construction of trust instruments. Indeed, every provision in a contract must, if possible, be given effect, because it is presumed that each was deliberately inserted. (*Continental Television Corp. v. Caster* (1963), 42 Ill. App. 2d 122, 191 N.E.2d 607.) Regarding the instant trust agreement, the notice clause is clear and unambiguous. Its sole purpose was to protect Dr. Ierulli and Mrs. Rosier's four children.

When Dr. Ierulli borrowed and withdrew dividends and earnings upon the policy without notifying his former wife, he clearly violated the trust agreement.

The majority reverses the trial court and denies the trustee's claim upon the basis that the trust agreement made no provision for damages in the event of a breach of the notice provision. However, the lack of a damage or penalty clause should not preclude the trustee's claim to the monies advanced on the policy in violation of its explicit terms. The policy was secured pursuant to court order for the benefit of Dr. Ierulli's children, and his estate has no right to the retention of the funds withdrawn from the policy. A party cannot have the benefits of a contract unless he has also performed the obligations. (*Kobus v. Jefferson Ice Co.* (1971), 2 Ill. App. 3d 458, 276 N.E.2d 725.) Where a party has breached a contract, he cannot take advantage of terms of the contract which benefit him. *Robinhorne Construction Corp. v. Snyder* (1969), 113 Ill. App. 2d 288, 251 N.E.2d 641, aff'd (1970), 47 Ill. 2d 349, 265 N.E.2d 670.

I agree with the trial court that the trustee is entitled to the asserted claim plus interest thereon. The award of $124,132.16 was not

602

an abuse of the court's discretion but rather represents an exercise of the court's inherent power of equity. Courts are not required to find an exact precedent for action which equitable considerations demand. *Stegeman v. Smith* (1966), 67 Ill. App. 2d 451, 214 N.E.2d 597.

The terms of the trust agreement were blatantly violated. The proper administration of justice and basic notions of fairness and equity compel an affirmance of the trial court's allowance of the instant claim. To emphasize a long-standing rule, it is unnecessary to have a precedent for equitable relief before it will be granted. (*Johnson v. Johnson* (1973), 11 Ill. App. 3d 681, 297 N.E.2d 285.) Accordingly, I respectfully dissent.