CAROLYN E. ALLEN, Plaintiff-Appellant and Counterdefendant and Third-Party Plaintiff, v. RUTH A. ALLEN, Defendant-Appellee and Counterdefendant and Third-Party Defendant (Kelly-Springfield Tire Company, Counterplaintiff and Third-Party Defendant; Timothy S. Allen, Third-Party Plaintiff-Appellee).

Second District No. 2—91—0548

Opinion filed March 27, 1992.—Rehearing denied April 28, 1992.

Badger & Badger, of Dixon (David W. Badger, of counsel), for appellant.

Gary R. Gehlbach, of Ehrmann, Gehlbach & Beckman, and Henry S. Dixon, of Law Offices of Henry S. Dixon, both of Dixon (Charles T. Beckman, of counsel), for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, Carolyn Allen, appeals from the judgment of the circuit court of Lee County, finding that she had no interest in and to the proceeds of an insurance policy on the life of her deceased husband, Arnold Gene Allen, issued through his employer, Kelly-Springfield Tire Company. The court had ordered the proceeds paid to Ruth Allen, the decedent's former spouse, and her son, Timothy Allen.

On appeal, plaintiff contends: (1) that she is entitled to recover the life insurance benefit proceeds, subject only to a limited equitable claim in Timothy Allen, and (2) that decedent's election to participate in the optional contributory life insurance component of the Kelly-Springfield Tire Company employee benefit plan constituted the creation of a trust within the meaning of section 301 of the Trusts and Dissolutions of Marriage Act (Ill. Rev. Stat. 1989, ch. 48, par. 301), thereby precluding Ruth Allen from recovering any contributory life insurance proceeds.

Kelly-Springfield Tire Company is not a party to this appeal, having been dismissed prior to trial by stipulation of the parties after depositing all insurance proceeds payable on the life of Arnold in an escrow account.

The facts as adduced at the bench trial were as follows. Ruth Allen (Ruth) and Arnold Allen (Arnold) were married in 1963. In 1965 when Arnold was hired by Kelly-Springfield Tire Company (Kelly-Springfield), he named Ruth as beneficiary to the basic life insurance benefits offered by his employer as a benefit of employment. In January 1976 Ruth and Arnold were divorced. At the time they had one child, Timothy Allen (Timothy), age 10. When the divorce occurred, the basic life insurance policy was worth approximately $9,500. No optional contributory life insurance benefit plan was in effect at the time of the divorce.

The judgment for dissolution specifically found in pertinent part:

> "9. The Defendant now holds life insurance policies on his life in the amount of Ten-thousand and no/hundredths dollars ($10,000)."

Additionally, the judgment ordered in pertinent part:

> "G. The Defendant maintain in full force and effect all life insurance now carried by him on his life with the main beneficiary of all such insurance being Timothy S. Allen."

Arnold and Carolyn Allen (Carolyn) were married in 1976. Carolyn testified that in 1979 Arnold brought home a three-by-five card and an 8-by-10 paper with it. She filled out the card, inserting her name as beneficiary, her relationship to Arnold, and his name and

social security number. Arnold then signed and dated the form. Carolyn did not make a copy of the form.

According to Carolyn, Arnold told her that he was going to take the card to work the next morning and turn it in. In the morning the form was gone. Carolyn acknowledged that she did not accompany Arnold to work the following morning, nor did she know to whom he gave the card. Carolyn admitted that up until the time she completed the card in 1979, Ruth remained the beneficiary of Arnold's life insurance policy. Carolyn stated that she and Arnold had agreed that Timothy was to get $10,000 (of the insurance proceeds).

On June 2, 1989, Arnold died suddenly of a heart attack.

Sue Brown testified that at the time of Arnold's death she was manager of employment and safety for Kelly-Springfield. As such, she handled certain matters pertaining to employee benefits. Brown stated that it was customary for her and the union representative, Jerry Reddington, to visit a surviving spouse to explain the benefits to which the spouse was entitled.

Prior to their visit to Carolyn, Brown contacted Kelly-Springfield's home office to determine what benefits were available to Carolyn. Brown learned that in addition to the $20,000 basic life insurance available to all employees, Arnold had enrolled in the optional life insurance plan at 300% of the value of the basic plan, or $60,000. Arnold's total life insurance coverage equalled $80,000. Brown asked the home office the name of the beneficiary on file and discovered that Ruth was named as beneficiary of the insurance proceeds. Since Brown knew Ruth was not the decedent's current spouse, she asked the home office to double-check the records to make certain that no other beneficiary card was on file. The home office rechecked its files and then contacted Brown, informing her that the only beneficiary card on file named Ruth as beneficiary.

When Brown and Reddington visited Carolyn, they discussed the fact that Ruth's name was on the beneficiary card. Carolyn maintained that she was sure Arnold had made a change in beneficiaries. Subsequently, Brown contacted the home office again, requesting a further check of the files to make certain that a new beneficiary card had not been misfiled under a different name.

Brown stated that at the time of Arnold's death Kelly-Springfield had no procedure for informing an employee as to whom he had designated as his beneficiary on his life insurance policy. It was the employee's responsibility to know who was named as his beneficiary, and this information could be acquired any time during working hours.

Brown explained that the current procedure for transmitting employee benefits designation cards to the home office was through intracompany mail. Brown did not know what procedure was used in 1979.

Jerry Reddington, benefit representative for United Rubber Plastic Workers of America, Local 745, testified that he had been the benefits representative since 1977 and that he was familiar with the (insurance) plans between Kelly-Springfield and the union. Reddington explained that to elect optional contributory life insurance an employee would sign a form indicating his desire to enroll in the plan and the amount of insurance he wished to purchase. The premiums were paid by payroll deduction. Reddington related that the optional contributory life insurance first became available to employees in July 1976.

Documents admitted into evidence showed that Arnold elected to enroll in the optional contributory life insurance plan at 100% on September 26, 1979, at 200% on July 28, 1982, and at 300% on June 25, 1985. To the best of Reddington's recollection the cards upon which an employee elected, in 1979, to enroll in the optional contributory life insurance plan were distributed to employees by their department supervisors.

Reddington recalled that shortly after Arnold's death, he and Sue Brown met with Carolyn. At that time they informed Carolyn that she was not listed as Arnold's beneficiary on his life insurance policy. Reddington stated that Carolyn thought that she was the beneficiary. Subsequent to the meeting with Carolyn, Reddington requested Kelly-Springfield to conduct a further search of its records, but no other beneficiary designation card was found.

Reddington explained the procedure followed in 1979 for effecting a change in beneficiary on an employee's life insurance policy. Reddington stated that an employee merely went to the personnel office at the Kelly-Springfield plant, and the individuals there would assist him in changing his beneficiary. In 1979 no copy of the change in beneficiary was kept by the union in its offices, nor was a copy provided to an employee.

Norma Klipping, a clerk-typist for 20 years in the industrial relations division of Kelly-Springfield, testified that her duties included assisting employees when they wanted to make changes in their insurance. Klipping explained the procedure for changing a beneficiary on an employee's life insurance policy. Klipping said that an employee would come to her office to request a beneficiary form. He would then complete the form in Klipping's office and sign it in her presence, as

she was required to witness it. When asked if instances existed when an employee would remove the form from her office to complete it, Klipping replied, "No, not to my knowledge."

Klipping stated that in 1979 the change of beneficiary form was a three-by-five index card which was addressed to the insurance department and forwarded to the home office by interoffice mail. Kelly-Springfield did not keep a copy of the form or give a copy to an employee, unless he requested it. If an employee wanted to find out whom he had designated as beneficiary on his insurance policy, he would come to Klipping, who would then call the home office to obtain the information.

At the conclusion of all the testimony, a stipulation was entered into evidence, indicating that if the court found Carolyn was not entitled to any of the insurance proceeds the court need not decide whether only a certain portion of the proceeds should be allocated to Timothy and the remainder to Ruth, who remained the designated beneficiary on the insurance policy. The stipulation stated that Timothy and Ruth had reached an agreement concerning the division of the proceeds. That agreement was that they would divide the insurance proceeds regardless if the court found that a portion of the proceeds should be paid to Timothy and a portion to Ruth, or if the court found that all of the proceeds should be paid to just one of them.

Additionally, counsel for plaintiff indicated to the court that plaintiff did not contest the award to Timothy of $9,500, the value of Arnold's insurance at the time of the dissolution of Arnold's and Ruth's marriage.

Following closing arguments by the parties, the court took the matter under advisement. In a subsequent memorandum decision, the court found that the evidence did not support Carolyn's claim that Arnold had executed a change of beneficiary on his life insurance policy. Additionally, the court found that Timothy's claim to the insurance proceeds was superior (by virtue of the dissolution judgment) to any beneficiary. Because Timothy and Ruth had agreed by stipulation that the court need not decide their respective interests in the policy proceeds, the court found it was not required to resolve this issue.

Carolyn filed a post-trial motion which was denied. This appeal then ensued.

On appeal, Carolyn contends that she is entitled to recover the life insurance proceeds subject only to a limited equitable claim in Timothy. Specifically, Carolyn asserts: (1) that the provisions of the 1976 judgment of dissolution bar Ruth from claiming any portion of the insurance proceeds; (2) that Timothy's equitable claim to the in-

surance proceeds is limited to payment from the basic life insurance benefit plan and to the value of the insurance at the time of the dissolution of the marriage; and (3) that under the Kelly-Springfield plan, Carolyn, as surviving spouse, is entitled to the insurance proceeds if Ruth's claim is barred.

Carolyn acknowledges that the law in Illinois is that a former spouse who is the designated beneficiary on an insurance policy is not barred from collecting the proceeds upon the death of the insured merely because they have divorced. (*Principal Mutual Life Insurance Co. v. Juntunen* (1989), 189 Ill. App. 3d 224, 227.) She further concedes that a general waiver of marital property rights upon divorce does not affect the expectancy that the former spouse has in the decedent's life insurance policy as designated beneficiary. (189 Ill. App. 3d at 227.) Carolyn maintains, however, that an exception or limitation exists as to the application of these principles and that the exception should be applied to the instant case. The exception exists, Carolyn asserts, if a dissolution judgment specifically addresses the entitlement to insurance proceeds. In such a case, the former spouse waives her right to claim under the beneficiary designation which still listed her as beneficiary. Because the 1976 dissolution judgment in the instant case specifically addressed life insurance, Carolyn contends that Ruth was barred from claiming any benefits payable pursuant to the beneficiary designation in effect at the time of the dissolution. Carolyn relies on two provisions of the dissolution judgment as well as the decisions in *Principal Mutual Life Insurance* and *Lincoln National Life Insurance Co. v. Watson* (1979), 71 Ill. App. 3d 900, to support her position.

Paragraph 9 of the findings portion of the dissolution judgment provided:

> "1. The Defendant now holds life insurance policies on his life in the amount of Ten-thousand and no/hundredths dollars ($10,000)."

Paragraph G of the decretal portion of the judgment ordered:

> "G. The Defendant maintain in full force and effect all life insurance now carried by him with the main beneficiary of all such insurance being Timothy S. Allen."

Carolyn maintains that these provisions terminated Ruth's interest as beneficiary of any of Arnold's life insurance policies.

■ Conversely, we believe the provisions specifically related only to the policy in force at the time of the judgment of dissolution, *i.e.*, the basic life insurance plan. Under the terms of the dissolution judgment, Arnold was required to designate Timothy as the beneficiary of

only that policy. Arnold was free to name any other person as a beneficiary of any other policy as long as such designation did not violate Timothy's equitable interest in the basic life insurance policy. We do not believe the provisions relied on by Carolyn show Ruth waived her right to take as the designated beneficiary on other insurance policies. Nor do we believe the decisions in *Principal Mutual Life* and *Lincoln National* support this position.

In *Principal Mutual Life* the decedent was insured under two life insurance policies, the proceeds of which were claimed by the decedent's former wife, who was listed as primary beneficiary, and decedent's brother, who was listed as second beneficiary. Because the decedent never changed the designation of the beneficiary on his policy after his divorce from his former wife, the former wife claimed he did not comply with policy requirements for changing beneficiaries and, therefore, she was entitled to the insurance proceeds. The trial court reached a contrary conclusion, finding that the ex-wife had waived her right and interest in the insurance proceeds by executing a release of those rights as part of a property settlement upon her dissolution of her marriage to the decedent.

The settlement agreement provided:

> "Each of the parties hereby releases and/or waives *any* interest, beneficial or otherwise, which he or she may have acquired in or to *life insurance policy*(ies) owned by the other." (Emphasis added.) (*Principal Mutual Life*, 189 Ill. App. 3d at 226.)

This provision differs significantly from those relied upon by Carolyn. In straightforward, express terms it bars either party from claiming life insurance proceeds from the other party's policies as well as bars any other interests the other party may have had in the policies themselves. In the instant case, no similar provision is included in the dissolution judgment. Neither paragraph 9 nor paragraph G contains a straightforward and express release of Ruth's interest in *all* insurance policies on Arnold's life. As appellees point out, the decision in *Principal Mutual Life* demonstrates the limited circumstances in which a court should find a complete waiver of a former spouse's interests in life insurance policies and does not support Carolyn's argument that paragraph 9 and paragraph G terminated any interests in Arnold's insurance policies.

In *Lincoln National* the surviving widow of the deceased claimed the proceeds of a life insurance policy based on a provision in the policy providing that if "the employee [deceased] fails to designate a beneficiary *** payment of such insurance shall be made to the employee's surviving spouse." (*Lincoln National*, 71 Ill. App. 3d at 901.) The

designated beneficiary on the policy was the deceased's former wife. However, at the time of the parties' divorce, they had entered into a property settlement agreement which provided that the deceased should maintain the life insurance policy in full force and effect and that the parties' minor child should continue to be the beneficiary of the policy during his minority.

Prior to trial, the former spouse assigned all her rights in the insurance proceeds to her son. The court determined that because the son was a minor at the time of his father's death, he was entitled to the proceeds from the father's insurance policy. The court also stated that the former spouse's assignment of all of her rights in the insurance proceeds (as designated beneficiary on the policy) had no effect on the result reached by the court because she "had no viable right to these funds." (*Lincoln National*, 71 Ill. App. 3d at 904.) Carolyn relies on this statement to show that Ruth also had no right to the proceeds in the instant case since, according to the dissolution judgment, Timothy was the designated beneficiary on Arnold's policy.

*Lincoln National*, however, is distinguishable from the instant case because only one insurance policy was at issue in *Lincoln National*, the one addressed in the settlement agreement. Here, the basic life insurance policy referred to in the dissolution judgment is not the only life insurance at stake. Also at issue is a contributory life insurance policy not in existence when the parties divorced and not referred to in the judgment of dissolution. Although, like the former spouse in *Lincoln National*, Ruth had no right to the proceeds from the policy named in the dissolution judgment, she had a right, as designated beneficiary on file with Kelly-Springfield, to other policies or amounts not mentioned in the judgment.

While emphasizing that effect must be given to the intent of the court entering the dissolution judgment, as well as the intention of the parties (*Home Insurance Co. v. Hortega* (1990), 193 Ill. App. 3d 941, 944), Carolyn, however, asserts that the logical import of the judgment was that Ruth release not only her right to claim the existing benefits but also any future rights which should arise under the beneficiary designation then existing in her favor. As appellees correctly point out, the parties' intent was clearly expressed in the dissolution judgment. Ruth relinquished her right to take as a designated beneficiary only of "all life insurance now carried by" Arnold.

Only if a property settlement agreement specifically includes a termination of the beneficiary's interest will the right to the proceeds of a policy on the life of the husband be affected, unless the policy itself or a statute provides otherwise. (*O'Toole v. Central Laborers'*

*Pension & Welfare Funds* (1973), 12 Ill. App. 3d 995, 997.) Here, where the dissolution judgment did not address the contributory life insurance policy nor did the basic or contributory life policies provide for termination of a former spouse's interest upon divorce, Ruth was entitled to the contributory life insurance proceeds. The contributory life insurance plan provided that "the insurance will be paid to the beneficiary designated by the Employee under the Basic Life Insurance *** Plan." That beneficiary was Ruth. Had Arnold desired to substitute another person or his estate as beneficiary, following his divorce from Ruth, he could have done so, or attempted to do so. However, no such act was proven by Carolyn.

We conclude that the provisions of the judgment of dissolution did not bar Ruth from claiming the contributory life insurance proceeds.

 █ Next, Carolyn acknowledges that under the dissolution judgment, Timothy was entitled to insurance proceeds from the basic life insurance plan. Where a dissolution judgment requires an insured to maintain life insurance for the benefit of a particular beneficiary, that beneficiary has an enforceable equitable right to the proceeds of the insurance policy against any other named beneficiary except one with a superior equitable right. (*Home Insurance Co. v. Hortega* (1990), 193 Ill. App. 3d 941, 943-44.) Carolyn argues, however, that Timothy's equitable interest was limited to the value of the basic life insurance at the time of the dissolution, or $9,500. We do not agree.

In *In re Schwass* (1984), 126 Ill. App. 3d 512, the Appellate Court, First District, addressed the issue regarding who was entitled to any increase in insurance benefits subsequent to a marital settlement agreement and divorce. The agreement in *Schwass* had required the husband to name his children as irrevocable beneficiaries on all existing insurance policies. At that time, the policies, which the husband had obtained through his employment, had a face value of $26,000. Subsequently, the husband remarried and named his present wife as beneficiary on all his policies. When he died, the value of the policies totaled $68,000, having increased as the decedent's salary and length of employment increased. The insurance company paid the proceeds to the widow, and the decedent's children brought suit to enforce the terms of the marriage settlement.

Pointing out that the language of the marital agreement provided the decedent's minor children were to be the beneficiaries of the insurance policies and not of any specified amount, the *Schwass* court found the children had a superior equitable interest in the proceeds of the policies. The court stated that since beneficiaries generally are entitled to the entire proceeds of a policy and since the intention of the

parties at the time of the settlement agreement was that the decedent's minor children were to be the beneficiaries of the policies, the children's equitable interest extended to the entire proceeds and was not limited to the face value of the policies in effect at the time of their issue. 126 Ill. App. 3d at 517.

Relying on the holding in *Schwass*, the Appellate Court, Third District, in *In re Estate of Ierulli* (1988), 167 Ill. App. 3d 595, reached a similar result. In *Ierulli* the decedent, pursuant to the terms of a dissolution judgment, was required to execute a life insurance trust agreement funded upon his death by a life insurance policy for the benefit of his four children. The trust agreement stated that decedent was to carry a life insurance policy with a face value of $250,000. At the time of decedent's death the trustee bank received $316,684.22 as principal and $1,420.65 as post-death interest from the insurance company pursuant to the trust agreement. The *Ierulli* court held that the bank was entitled to the full amount received from the insurance company and was not limited to the face value of the insurance policy because, "[a]lthough the agreement stated that the insurance policy was to carry a face value of $250,000, it did not say that the children were to receive only a specified dollar amount." 167 Ill. App. 3d at 600.

In *Koenings v. First National Bank & Trust Co.* (1986), 145 Ill. App. 3d 14, this court also relied on the holding in *Schwass* to decide that the beneficiaries of five insurance policies issued on decedent's life were entitled to the entire proceeds at the time of his death rather than an amount equal to the value of the policies at the time of decedent's divorce from his former wife. As part of a property settlement agreement, decedent had agreed to maintain insurance policies on his life, naming the children by his former wife as beneficiaries. At the time of the agreement, the policies had a total face value of $85,828. At the time of decedent's death, the total face value of the policies was $168,821.60.

This court concurred with the finding of the *Schwass* court that in determining whether a decedent's children were entitled to an increase in insurance benefits, the focus should be on the intention of the parties at the time of the marriage settlement agreement. That intent was that the children were to be beneficiaries of the policies and not of any specified dollar amount. Therefore, in the absence of any contrary intent, the children were entitled to the entire proceeds.

Likewise, in the instant case, decedent was required to maintain all life insurance in existence with Timothy as beneficiary. As in *Schwass* and *Koenings*, no dollar amount of insurance was specified in the paragraph directing decedent to name his son as beneficiary. Par-

agraph 9 of the dissolution judgment did list the face value of the insurance as $10,000 at the time of the dissolution. However, based on the holding in *Ierulli*, Timothy's interest was not limited to the value recited in paragraph 9, but, instead, he was entitled to the value of the life insurance policy at the time of Arnold's death, or $20,000.

Moreover, we do not agree with Carolyn's suggestion that the precedent established in *Schwass, Koenings* and *Ierulli* should be limited. In none of these cases did the court determine, as Carolyn advocates here, that a beneficiary's right to receive the value of a decedent's life insurance at the time of his death was directly related to whether the decedent's obligation to maintain insurance ended at some future time, *i.e.*, the age of majority or completion of college.

■ Carolyn also suggests that because Arnold's obligation to maintain insurance was not limited, it should be considered as a substitute for a testamentary gift and that this gift should not vary with the amount of insurance available to the employee. As appellees point out, however, nothing in the record supports Carolyn's claim that the dissolution judgment was intended by the parties as a testamentary disposition. Furthermore, neither this theory nor Carolyn's limitation theory mentioned above was presented to the court below, either at the bench trial or in Carolyn's post-trial motion. Consequently, they are not properly before this court, as theories which are inconsistent with those espoused in the trial court may not be considered on review. *Monroe County Water Cooperative v. City of Waterloo* (1982), 107 Ill. App. 3d 477, 480.

We conclude that Timothy was entitled to the entire proceeds of the basic life insurance policy.

Carolyn also argues that Timothy has no equitable claim to the optional contributory life insurance benefits. Relying on *McWhite v. Equitable Life Assurance Society* (1986), 141 Ill. App. 3d 855, Carolyn maintains that Timothy's equitable claim does not extend to an after-acquired policy that is not a successor to or substitute for the policy which the decedent was required to maintain. Arnold did not participate in the contributory life insurance plan until three years after his divorce from Ruth.

In *McWhite* the decedent, pursuant to a dissolution judgment, named his minor son as the beneficiary in any and all life insurance maintained by his employer. Subsequent to his divorce, decedent purchased two additional life insurance policies through his employer. Two years later decedent married his second wife and executed a change of beneficiary form to include this wife as a cobeneficiary of his life insurance policies. Upon decedent's death, the proceeds from

the insurance in existence at the time of the dissolution were determined to belong to decedent's minor son. The determinative issue on appeal was whether, pursuant to the terms of the dissolution judgment, decedent's son was entitled to the entire proceeds of the insurance policies acquired by decedent after the date of the divorce. Based on the decision in *Schwass*, decedent's first wife contended that the parties' son was entitled to the entire proceeds.

The Appellate Court, First District, did not agree, opining that, unlike the policies in *Schwass*, the after-acquired policies in *McWhite* were not successor policies to ones in which the decedent's minor son had already obtained an equitable interest at the time of the judgment of dissolution. Rather, the after-acquired policies constituted additional policies voluntarily purchased through payroll deductions by the decedent subsequent to that date. The *McWhite* court reasoned that since decedent's child had no equitable interest in these policies on the date of dissolution, he did not have an equitable interest in the policies at the time of his father's death. 141 Ill. App. 3d at 863.

We agree with the *McWhite* court's determination that the *Schwass* case was not an appropriate basis for finding that the minor child had a superior equitable right to the proceeds of the after-acquired policies. We find *McWhite* instructive in reaching our decision that Timothy had no equitable interest in the contributory life insurance benefits. Like *McWhite*, the additional life insurance in question was voluntarily purchased by Arnold subsequent to the date of his divorce from Ruth. In fact, at the time of their divorce the contributory life insurance plan was not even in existence. As Timothy had no equitable interest in the optional contributory life insurance proceeds at the time of the dissolution judgment, he could not have had an equitable interest in the proceeds at the time of Arnold's death. Accordingly, Timothy's equitable interest was in the basic life insurance policy only.

Despite this conclusion, Carolyn is not entitled to the proceeds from the contributory life insurance. As determined earlier in this disposition, Ruth was on file with Kelly-Springfield as the designated beneficiary of that insurance, and Carolyn never proved that Arnold had executed a change in beneficiary naming her to replace Ruth. Thus, Ruth, not Carolyn, was entitled to the contributory life insurance proceeds.

The trial court found that Timothy had a superior claim to all the insurance proceeds in question. We, however, do not agree. In our opinion, Timothy's claim to the proceeds from the basic life insurance plan was superior based on the terms and conditions of the dissolution

judgment. But, Ruth, as named beneficiary on Arnold's insurance through Kelly-Springfield, had a superior claim to the after-acquired contributory life insurance.

Nevertheless, our determination does not affect the final outcome of the trial court, *i.e.*, that Carolyn was not entitled to any insurance proceeds. The trial court pointed out in its memorandum decision and reiterated in its order denying Carolyn's post-trial motion that it did not need to resolve the issue of how the proceeds of the life insurance were to be allocated between Timothy and Ruth. Ruth and Timothy had entered into a stipulation at the end of the bench trial providing that they were going to divide the proceeds regardless if the court found that Timothy and Ruth were each entitled to certain portions of the entire proceeds, or if the court found that only one of them should be paid all the proceeds. The trial court honored the stipulation and made no division of the proceeds. Accordingly, although we have determined which portion of the entire proceeds goes to Timothy and which to Ruth, our determination does not alter the trial court's final result.

Last, Carolyn asserts that Arnold's election to participate in the optional contributory life insurance plan constituted the creation of a trust by Arnold within the meaning of section 1 of the Trusts and Dissolutions of Marriage Act (Ill. Rev. Stat. 1989, ch. 148, par. 301), thereby precluding Ruth from recovering any contributory life insurance proceeds. We do not agree.

█ Testimony established that the optional contributory life insurance plan was part of a collective bargaining agreement between Kelly-Springfield and the United Rubber Plastic Workers of America, of which Arnold was a member. According to union representative Jerry Reddington, the agreement was adopted in July 1976. A "collective bargaining agreement" is an "[a]greement between an employer and a labor union which regulates terms and conditions of employment." (Black's Law Dictionary 263 (6th ed. 1990).) While not an ordinary contract, the agreement, nevertheless, is a valid contract between an employer and his employees acting through the agency of a union. (48A Am. Jur. 2d *Labor & Labor Relations* §§1797, 1800 (1979).) As such, we do not consider Arnold's election to participate in one of the benefits established by the agreement, the optional contributory life insurance plan, as establishing a trust. Rather, by his election, Arnold chose to take advantage of one of the rights he possessed as an employee of Kelly-Springfield and a member of the union, *i.e.*, the right to purchase optional contributory life insurance through his employer, a right measured and adjudged by the collective bargaining

agreement. We conclude that Arnold's election to participate in the contributory life insurance plan did not establish a trust.

Nevertheless, even were we to determine that Arnold's participation did establish a trust, section 1 of the Trusts and Dissolutions of Marriage Act (the Act) (Ill. Rev. Stat. 1989, ch. 148, par. 301) would not be applicable so as to bar Ruth's recovery of the contributory life insurance proceeds. The portion of the Act relied upon by Carolyn provides:

> "Unless the governing instrument or the judgment of judicial termination of marriage expressly provides otherwise, judicial termination of the marriage of the settlor of a trust revokes every provision which is revocable by the settlor pertaining to the settlor's former spouse in a trust instrument or amendment thereto *executed by the settlor before the entry of the judgment of judicial termination of the settlor's marriage,* and any such trust shall be administered and construed as if the settlor's former spouse had died upon entry of the judgment of judicial termination of the settlor's marriage."

(Emphasis added.) (Ill. Rev. Stat. 1989, ch. 148, par. 301(a).)

To revoke any rights Ruth acquired to the contributory life insurance proceeds under Carolyn's trust theory, it would have to be shown that the "trust" established by Arnold's election to participate in the contributory life insurance plan was "executed *before* the entry" of the dissolution judgment. That could not be shown here, as the contributory life insurance plan was not in effect until after the dissolution of Arnold's and Ruth's marriage in January 1976. Moreover, Arnold did not elect to participate in the plan until 1979, three years after the parties' divorce. Accordingly, section 1 of the Act has no application.

The judgment of the circuit court of Lee County is affirmed.

Affirmed.

INGLIS, P.J., and McLAREN, J., concur.